## Rykaczewski *v.* Kerry Homes, Inc., Appellant.

Argued March 24, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*M. Carton Dittmann, Jr., with him Edward C. Bauer, Jr., Manus McHugh,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Robert W. Tredinnick,* with him *Smillie, Bean, Davis & Tredinnick,* for appellees.

OPINION BY GUNTHER, J., June 15, 1960:

The jury in this case returned a verdict for plaintiffs. Defendant corporation filed this appeal from a refusal of motions for judgment n.o.v. and for a new trial.

This appeal arises out of a suit in assumpsit upon a written agreement for the purchase of a home; the agreement was prepared and executed by Hilltop Realty Company as agent for seller. The contract provided that all deposit monies be held in a separate escrow account, until all the terms of the agreement had been met. Hilltop was authorized by the purchasers to make application for title insurance and to do the conveyancing. The agreement also provided that Hilltop was to have the sole right to procure, on behalf of the purchasers, a 30 year mortgage in the amount of $14,500 at 4½% interest; and that in the event that a mortgage such as that could not be pro-

cured, the deposit would be returned to the purchasers and the agreement be null and void.

Financing of the sale was unavailable and the plaintiffs demanded the return of the down payment. The principal officer of the Hilltop Realty Company, it seems, absconded with the escrow funds. Plaintiffs, in order to recover their down monies, entered suit against Kerry Homes, Inc.

Defendant, in its answer, averred a subsequent oral extension of the settlement date, that it was ready to secure a mortgage, and that Hilltop was plaintiffs' agent for the purpose of securing a mortgage. A counterclaim was filed for the deposit under the liquidated damage clause on the ground that plaintiffs were unwilling to perform and also for extras expended on the house at the request of the plaintiffs. Upon trial of the case the jury returned a verdict against defendant for $841.86, and likewise against defendant on its counterclaim.

The exceptions taken by defendant were dismissed and the motion for a new trial denied.

The important question that requires an answer is whether under all the circumstances of the case, the broker was acting as defendant's agent in holding the $790.00 as hand or down money.

When plaintiffs executed the agreement on June 14, 1956, they were dealing with the real estate agent on the premises. The contract was between Hilltop Realty Co., agent for Kerry Homes, Inc., as seller and plaintiffs, and was executed by one R. Barrett, as agent for sellers, and ratified by Kerry Homes, Inc.

The settlement date was set for October 1, 1956 and later extended to November. One term of the agreement provided that part of the purchase price was to be met by a 30 year, 4½% mortgage. The agreement also provided that, if such a mortgage could not be

obtained, plaintiffs were entitled to the return of the down payment. When the mortgage could not be obtained, plaintiffs demanded the return of down money. At the suggestion of defendant, the plaintiffs contacted the Hilltop Realty Company, only to learn for the first time that Barrett, an officer of the Hilltop Realty Co., had absconded with their money. Defendant contends that the agreement is clear that Hilltop was acting as agent for both. The trial court, however, charged that the broker was defendant's agent for all purposes, including the so-called escrow arrangement. Was the lower court correct in its charge?

In the case of *Paul v. Kennedy*, 376 Pa. 312, 316, 102 A. 2d 158 the Court observed the following:

"The buyer performed and fulfilled all the terms and conditions required of him by the agreement, prior to Brenner's embezzlement; the seller failed to perform prior to the embezzlement all the conditions required to be performed by him. We believe this agreement was sufficiently different from the ordinary escrow agreement to make it both equitable and legal to impose this unfortunate loss upon the seller, whose agent Brenner primarily was throughout the entire transaction."

The purpose for an escrow in the *Paul* case was to protect the buyer in the event the P.U.C. would not approve the transfer of the certificate of public convenience. In the instant case, in the event that the mortgage could not be placed either by seller or buyer, then the deposit would be returned to the purchasers. There is evidence that defendant procured mortgages for all its buyers and had an obligation to procure a mortgage for the plaintiffs when the defalcation occurred. Hilltop was in charge, drew the agreements and was compensated by the seller. As was stated in the *Paul* case, supra, the agreement and the surround-

ing circumstances are such as to make it both equitable and legal to impose this unfortunate loss upon the seller whose agent was in the transaction throughout.

In the case of *Lipman, Trustee v. Noblit,* 194 Pa. 416, 45 A. 377 the attorney for the vendee was entrusted with the amount of the mortgage until the satisfaction of the mortgage, and then to pay the money to the vendor. The evidence pointed to the fact that the attorney held the money as custodian for the vendor and the vendee was not liable for the attorney's embezzlement of the money.

The defendant in the instant case treated Hilltop as its agent for the custody of the money. Hilltop was selected by the seller, stationed by the seller in its sample home, and authorized to secure the mortgage and to accept deposits. We are most clearly of the opinion that in these circumstances defendant consented to Hilltop acting as its agent for the custody of the money, and it must therefore bear the loss resulting of Hilltop's officer's embezzlement.

There is no doubt that plaintiffs under the agreement are entitled to recover the down money from defendant's agent; but since defendant's agent absconded, recovery is had against the defendant who is the principal. In equity and in law the liability of the seller is clear. Where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.

The agreement clearly provides that the inability of either party to secure proper financing shall render the instrument null and void. The mortgage was not secured. Was this not a failure of the condition set forth in the agreement?

A review of the evidence, the law and the charge of the court do not point to any reversible error.

Order is affirmed.