870 A.2d 787

Rozanna Q. REUTZEL and Mark Reutzel,

v.

Richard DOUGLAS, M.D. and Allegheny General Hospital,

Appeal of Rozanna Q. Reutzel.

No. 24 WAP 2004.

Supreme Court of Pennsylvania.

Argued Sept. 20, 2004.

Decided March 29, 2005.

John E. Quinn, Esq., Raymond Paul Johnson, Paul W. Danielsen, Philadelphia, for Rozanna Q. Reutzel.

Terry C. Cavanaugh, Esq., Pittsburgh, for Allegheny General Hospital.

Diane Barr Quinlin, Esq., Pittsburgh, for Richard A. Douglas, M.D.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice NIGRO.

The issue in this case is whether the Superior Court erred in enforcing a settlement agreement between Appellants Rozanna and Mark Reutzel and Appellees Dr. Richard Douglas, M.D., and Allegheny General Hospital ("AGH") based on its conclusion that the Reutzels' attorney had apparent authority to settle the case on the Reutzels' behalf. For the following reasons, we conclude that it did err and therefore reverse.

On November 23, 1994, Mark Reutzel and his wife Rozanna were traveling along an interstate highway in the family's mini-van when Mark lost control of the vehicle, causing it to

veer across the road's grass median and collide head-on with a car traveling in the opposite direction. As a result of the collision, Rozanna sustained serious injuries to her back which rendered her paraplegic. Thereafter, she underwent back surgery at AGH, with Dr. Douglas as her surgeon. Unfortunately, the surgery was not entirely successful as Dr. Douglas, by his own later admission, incorrectly implanted a pedicle screw into Rozanna's vertebrae, thereby aggravating her pre-existing injury. Rozanna subsequently underwent a second surgery to have the screw removed and in 1996, the Reutzels brought an action against Dr. Douglas and AGH, seeking to recover for the negligently performed surgery.

In 2002, the parties engaged in negotiations to settle the case. Due largely to a personality conflict between the Reutzels' attorney, Paul Danielsen, and Dr. Douglas' attorney, Diane Barr Quinlin, the two communicated primarily in writing and apparently used AGH's attorney, Terry Cavanaugh, as an intermediary for many of their negotiations. On July 30, 2002, Danielsen left a voicemail for Cavanaugh, stating in relevant part:

> Before I have a knockdown drag out of any kind with [Quinlin], my thought is if you could talk to her first, you guys get us a hundred, contribute what you want, I will make it go away. I don't have client consent, but I'm not going to come back to you and say $125,000, I can guarantee you that. A hundred and it all goes poof!

Tr. Ct. Op. at 2.

As requested, Cavanaugh communicated this message to Quinlin. Quinlin, however, was about to leave on a trip to Europe and therefore informed Danielsen that he should temporarily communicate with Dr. Douglas' insurance agent, John Cleary, about all settlement matters. On August 7, 2002, Cleary advised Danielsen that he had obtained authority to settle the suit on Dr. Douglas' behalf for the $100,000 figure that Danielsen had suggested. When Quinlin returned from Europe, Cleary informed her that he had accepted the $100,000 proposition from Danielsen. Quinlin, believing the case to be settled, relayed this information to Cavanaugh, who

agreed with Quinlin that there had been a meeting of the minds on the $100,000 figure, but cautioned Quinlin that Danielsen had since contacted him in an attempt to re-open negotiations, saying that he was "losing control of [his] client" and would actually need more money to settle the case. N.T., 10/28/02, at 5.

Fearful that Danielsen was trying to evade their prior agreement, on October 7, 2002, Quinlin and Cavanaugh filed a Joint Petition to Enforce Settlement Agreement (the "Petition") in which they asserted that the July 30 voicemail was an offer to settle for $100,000 and that Cleary's conversation with Danielsen on August 7 was an acceptance of that offer. For their part, the Reutzels and Danielsen claimed that they understood the voicemail and subsequent conversations merely to be part of ongoing negotiations and thus, were shocked by Quinlin's and Cavanaugh's filing of the Petition.

Following a hearing, the trial court granted the Petition and ordered AGH and Dr. Douglas to pay the Reutzels $100,000, finding that: (1) Danielsen had conveyed his ability to settle the suit on the Reutzels' behalf in the July 30 voicemail, despite his disclaimer that he did not have client consent; and (2) Cavanaugh and Quinlin had reasonably relied on that representation. The trial court therefore concluded that Quinlin and Cavanaugh had successfully established that Danielsen had acted with apparent authority, which was all that was necessary to bind his clients under Superior Court precedent. Tr. Ct. Op. at 5 (citing *Hannington v. Trustees of the Univ. of Pennsylvania,* 809 A.2d 406 (Pa.Super.2002)).

On appeal, the Superior Court affirmed, summarily endorsing the trial court's application of the *Hannington* decision and adopting the trial court's findings of facts as conclusively establishing that apparent authority existed under the circumstances.

In a lengthy dissent, Judge Johnson agreed that whether Danielsen had apparent authority to settle was the appropriate inquiry under the circumstances of the case, but disagreed that such authority was present here. According to Judge

Johnson, the evidence showed that Danielsen expressly disavowed his authority to settle the case, and that such disavowal destroyed any reasonable reliance that Quinlin and Cavanaugh could place on Danielsen's representations. Moreover, Judge Johnson stated that the evidence, including correspondence between Cavanaugh and Danielsen after July 30 that appeared to signal continuing negotiations,[1] as well as the failure of all three parties to tender a release during the six week period following the voicemail, showed that Cavanaugh and Quinlin did not actually believe that the case had been settled, belying the trial court's conclusion that the two had reasonably relied on Danielsen's representations. Judge Johnson therefore stated that he would have reversed the trial court's order based on a lack of apparent authority.

On appeal to this Court, the Reutzels contend that the lower courts erred in concluding, based on *Hannington*, that Danielsen's authority was sufficient to bind his clients to a settlement agreement when he expressly stated that he did

---

**1.** On August 2, 2002, three days after receiving Danielsen's voicemail, Cavanaugh sent a letter to Danielsen suggesting that the two commemorate the contents of the voicemail in a letter, with a copy to be sent to Quinlin. The letter stated, in relevant part:

Dear Paul,
*First, it is important to note that you have not made a commitment to me.*
Nonetheless, what harm would there be in a letter that I direct to you with a copy to [Quinlin] as follows:
Dear Paul,
I do appreciate the tone and tenor of our recent, cordial conversations. *You have indicated to me that you are prepared to recommend to your client* that she abandon all claims against Allegheny General Hospital so that you can concentrate exclusively on our co-defendant, Dr. Douglas.

\* \* \* \*

*Because you have advised that you and counsel for the neurosurgeon are beginning negotiations,* I see no point in discontinuing the action as to my client and amending the caption at present. *If negotiations break down,* I do appreciate your willingness to abandon claims again Allegheny General.

\* \* \* \*

Very Truly Yours,
/s/ Terry C. Cavanaugh
Super. Ct. Op. at 8–9 (Johnson, J., dissenting) (emphases added).

not have his client's consent. We agree.[2]

The law in this jurisdiction is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement. *McLaughlin v. Monaghan,* 290 Pa. 74, 138 A. 79 (1927); *Starling v. West Erie Ave. Bldg. & Loan Ass'n,* 333 Pa. 124, 3 A.2d 387 (1939); *Archbishop v. Karlak,* 450 Pa. 535, 299 A.2d 294 (1973); *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58, 66 (1989). The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly. *See, e.g., Starling,* 3 A.2d at 388 ("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him"). As such, a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf. *See* RESTATEMENT (SECOND) OF AGENCY § 7 cmt. c (1958).

In concluding that Danielsen bound the Reutzels to a settlement agreement that they did not authorize, the lower courts relied on the Superior Court's decision in *Hannington* for the proposition that an attorney can settle a case based on apparent authority alone. In *Hannington,* the plaintiff, a Ph.D. candidate at the University of Pennsylvania (the "University"), sued the University for breach of an alleged tuition agreement. Following several months of settlement negotiations, the plaintiff's attorney informed counsel for the University that his client had agreed to the terms of the parties' negotiated agreement and release, and several weeks later, he sent a finalized version of the agreement to the University's counsel and informed the court that the parties had settled. Nevertheless, the plaintiff thereafter refused to sign the final settlement agreement, hired new counsel, and moved to resume his case against the University. The trial court denied the plain-

---

**2.** This case involves a question of law and therefore our review is plenary. *Stoner v. Stoner,* 572 Pa. 665, 819 A.2d 529, 530 (2003).

tiff's motion and on appeal, the Superior Court affirmed. According to the Superior Court, the plaintiff was bound by the settlement agreement because his attorney had acted with apparent authority and the University's counsel had reasonably believed that the plaintiff's attorney had that authority. In holding as such, the Superior Court cited this Court's decision in *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983), for the underlying legal premise that a settlement agreement may be enforced against a principal where his lawyer acts with apparent authority, stating that "[t]he *Rothman* Court ruled that, even though plaintiff's lawyer committed a fraud on plaintiff, plaintiff's lawyer had the apparent authority to settle with the innocent opposing party." *Hannington*, 809 A.2d at 408.

Appellees urge this Court to uphold the Superior Court below, arguing that it properly applied the *Hannington* decision. However, *Hannington's* statement that an attorney can bind his client to a settlement based on apparent authority alone is simply an incorrect statement of the law and is grounded in a misreading of this Court's decision in *Rothman*.[3]

*Rothman* was a personal injury case arising out of an automobile accident in which plaintiff Phillip Rothman was injured. After a period of settlement negotiations, Mr. Rothman's counsel informed Liberty Mutual, the defendants' insurance company, that his client had agreed to settle the case for seven thousand dollars. Liberty Mutual, relying on that representation, sent to Mr. Rothman's counsel a settlement agreement and a check made payable to Mr. Rothman and his wife. Contrary to his counsel's representations, however, Mr. Rothman had not authorized his counsel to settle the case, and when his counsel received the two documents, he forged Mr. Rothman's name and pocketed the settlement funds for his own use. Thereafter, the court declared the case settled, discontinued, and ended.

**3.** We note that this Court granted allowance of appeal in *Hannington*, 573 Pa. 659, 820 A.2d 162 (2003) (Table), but the case was subsequently discontinued upon the request of the parties.

Years later, Mr. Rothman learned of his attorney's fraud and sought to re-open the case, arguing that "since he was neither aware of, nor had he authorized the settlement and [since] his agent acted without authority, he should not be prevented from pursuing his claim against [defendants] and their insurer." *Rothman,* 469 A.2d at 545. The lower courts agreed with Mr. Rothman and reinstated his action against the defendants. On appeal, however, this Court reversed, explaining that "where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong." *Id.* (quoting *Rykaczewski v. Kerry Homes, Inc.,* 192 Pa.Super. 461, 161 A.2d 924, 926 (1960)). As Mr. Rothman had hired the fraudulent attorney, this Court reasoned that as between him and the innocent insurance company, he should bear the loss. It therefore refused to re-open the personal injury case.

As *Hannington* and the decision of the Superior Court below make clear, *Rothman* has been interpreted, at least on occasion, as ruling that attorneys may bind their clients to settlements based on apparent authority alone. *See Hannington,* 809 A.2d at 408 (Pa.Super.2002) ("The doctrine of apparent authority permits a settlement agreement to be enforced where a third party reasonably believes that the principal's lawyer, the agent, had the authority to settle the case even though the lawyer fraudulently represents that he has such authority.") (citing *Rothman,* 469 A.2d at 545); *id.* ("The *Rothman* court ruled that, even though, plaintiff's lawyer committed a fraud on plaintiff, plaintiff's lawyer had the apparent authority to settle with the innocent opposing party."); Super. Ct. Op. at 6 ("Our reading of *Hannington* reveals that it comports with existing law regarding the doctrine of apparent authority."); *see also Manzitti v. Amsler,* 379 Pa.Super. 454, 550 A.2d 537 (1988) (applying *Rothman* and concluding that settlement agreement was enforceable where defendant's insurer had reasonable belief that an oral settlement agreement reached with plaintiffs' counsel had been expressly authorized by plaintiffs); *Covington v. Continental*

*Gen'l Tire, Inc.*, 381 F.3d 216, 220 (3d Cir.2004) ("[Q]uestions of agency certainly emanated from the ethers of *Rothman* "); *Farris v. JC Penney Co., Inc.*, 176 F.3d 706, 709 (3d Cir.1999) ("At best, the court has left the applicability of the [apparent authority] doctrine open, seeming to suggest in *Rothman* ... that apparent authority might be used to enforce a settlement given the right set of facts."). However, contrary to the understanding of these courts, *Rothman's* disposition did not rest on principles of apparent authority and thus, did not stand for such a proposition. Indeed, the first sentence of the *Rothman* opinion explains that the case raised the issue of "who must bear the burden of loss between innocent parties where the attorney for one of the parties has acted *beyond the scope of his authority* and has misappropriated funds." *Rothman*, 469 A.2d at 544 (emphasis added). Similarly, at the beginning of its analysis, the court states that "it must be understood that under the facts of this case, there is no question of an implied or an apparent agency," emphasizing that the "law in this jurisdiction is quite clear that an attorney must have express authority to settle a cause of action of the client." *Id.* at 545. Accordingly, while the court ultimately held Mr. Rothman to the terms of the settlement that he had not authorized, it did so not based on a conclusion that his counsel had apparent authority, but rather, based on "the long recognized principle that where one of two innocent parties must suffer because of the fraud of a third, the one who has accredited him must bear the loss." *Id.* (citing *Keller v. N.J. Fidelity and Plate Glass Insur. Co.*, 306 Pa. 124, 159 A. 40 (1932); *Mundorff v. Wickersham*, 63 Pa. 87 (1870)); *see also id.* (citing with approval cases in which "the lack of authority of the agent has been rejected as a basis for shifting the principal's losses onto the innocent third party.").

We therefore conclude, as stated above, that *Rothman* did not establish that an attorney can bind his client based on apparent authority. Instead, the law remains that an attorney can only bind his client to a settlement based on express authority. *See, e.g., Starling.* Accordingly, *Hannington* clearly misstated the law emanating from *Rothman* and the

lower courts erred in relying on *Hannington's* misstatement to find that the Reutzels were bound to the negotiated settlement here.

That said, as we did hold in *Rothman* that the innocent plaintiff in that case had to accept a settlement that his attorney had no authority to enter into, we feel compelled to consider whether the same principles of equity and agency that drove *Rothman's* conclusion should also compel us to find that the Reutzels are bound to the terms of the settlement that Danielsen negotiated.[4] We conclude that they do not. As a general matter, we note that *Rothman* was a particularly egregious case of attorney fraud and therefore warranted somewhat unusual treatment. *See Rothman,* 469 A.2d at 544 ("Mindful of the adage that hard cases make bad law, we are constrained to conclude that the innocent client must bear the brunt of his counsel's errant behavior."). In contrast, in the instant case, while Appellees contend that Danielsen misled them as to his authority, they do not go so far as to characterize his conduct as fraud and indeed, it seems clear that Danielsen's representations to Appellees regarding settlement simply did not rise to that level.[5] In any event, unlike the attorney in *Rothman,* Danielsen certainly did not defraud his own client, much less enter into a settlement by forging his client's signature and then pocketing the proceeds for his own use. As such, unlike the situation in *Rothman,* we are not faced with two defrauded parties, between whom we must apportion a loss. *Rothman,* 469 A.2d at 545 ("[W]here one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss.").

4. This Court specifically stated in *Rothman* that our holding was "consistent with fundamentally sound principles of *agency and equity* . . . ." *Id.* at 546 (emphasis added).

5. We recognize that the trial court concluded that opposing counsel reasonably believed that Danielsen had authority to settle the case. *See* Tr. Ct. Op. at 4–6. However, even accepting this as so, it does not transform Danielsen's conduct into fraud and certainly does not transform it into a fraud of the magnitude of that in *Rothman.* Accordingly, we need not revisit the trial court's finding in that regard in order to conclude that *Rothman* is distinguishable on its facts and does not require the Reutzels to be bound by the settlement here.

In addition, the fact that the Reutzels were not defrauded is significant in the balancing of the equities here, because defrauded clients like those in *Rothman* can oftentimes recover their losses from the Client Security Fund, *see* 469 A.2d at 546 n. 4 (noting that Mr. Rothman's losses would be minimized by his ability to collect from the fund, citing Pa.R.D.E. 502, et seq), while the Reutzels, whose attorney did not defraud them, would not be entitled to such recovery. *See* Pa.R.D.E. 514 (Permitting compensation for losses caused by an attorney's "dishonest conduct"); Pa.R.D.E. 513 (defining dishonest conduct at "wrongful acts or omissions committed by [an attorney] in the manner of defalcation or embezzlement of money, or the wrongful taking of conversion of money, property or other things of value"). Finally, we think it noteworthy from an equities standpoint that the plaintiff in *Rothman* sought to set aside the settlement almost five years after it was executed, which would have seriously disrupted both the defendants' and the court's long-held belief that the case was settled, whereas here, the settlement had not been finalized, the case remained active, and at the most, the defendants only believed the case to be settled for a matter of two months. Accordingly, although this Court determined in *Rothman* that agency and equitable principles required Mr. Rothman to bear the losses sustained by his attorney's misconduct, we conclude that these principles do not require a similar result here.

In sum, we conclude that the Superior Court erred in holding that Danielsen's apparent authority was sufficient to bind the Reutzels to the terms of the oral settlement agreement at issue, when this Court has clearly stated that an attorney may only bind his client to the terms of a settlement based on express authority. *See, e.g., Starling,* 333 Pa. 124, 3 A.2d 387. Moreover, while we recognize that *Rothman* required a plaintiff to bear the loss associated with his attorney's fraud in connection with an unauthorized settlement, we do not believe that the same result is mandated in this case, as the facts and equities of the two cases are easily distinguishable from one another.

For the foregoing reasons, the Superior Court decision is reversed, the trial court's order granting Appellees' Joint Petition to Enforce the oral settlement agreement is vacated, and the case is remanded for further proceedings.

Chief Justice CAPPY files a concurring opinion in which Justice NEWMAN joins.

Justice EAKIN files a concurring opinion in which Justice BAER joins.

Chief Justice CAPPY, concurring.

I join the majority opinion. I write separately, however, to note that I would take this opportunity to adopt, prospectively, the doctrine of apparent authority as set forth in Section 27 of the Restatement (Third) of the Law Governing Lawyers. I favor embracing this approach due to its recognition of the practical difficulties inherent in negotiating and enforcing settlements, and its proper balancing of the competing policies of the client's right to control settlement, protection of third parties, and our strong public policy in favor of settlement.

As set forth by the majority, the law in our Commonwealth has been clear that an attorney must have express authority in order to bind a client to a settlement agreement. *Starling v. West Erie Avenue Buildings & Loan*, 333 Pa. 124, 3 A.2d 387, 388 (1939). While it has been suggested that whether our Court would adopt the doctrine of apparent authority is an open question,[1] our prior case law has expressly rejected the apparent authority doctrine. *Starling*, 3 A.2d at 388 (determining that the "necessity of special [express] authority ... not only denies the existence of implied authority, but also of apparent authority of an attorney to bind his client" to a settlement agreement).

1. *See, Farris v. JC Penney Company, Inc.*, 176 F.3d 706, 709 (3rd Cir.1999)(noting that the Pennsylvania Supreme Court has never invoked the doctrine of apparent authority to enforce a settlement agreement, but at best, "has left the applicability of the doctrine open ...." citing *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983)).

I, however, would adopt, prospectively, the doctrine of apparent authority, as stated in Section 27 of the Restatement (Third) of the Law Governing Lawyers as the law of our Commonwealth. Embracing Section 27 would slightly alter the current requirement of express authority by permitting enforcement of a settlement agreement where a third party reasonably assumes that the lawyer is authorized to settle a matter, based upon the client's manifestations of such authorization:

> A lawyer's act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestations of such authorization.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 27 (2000).

I believe that such an approach is more desirable than the doctrine of express authority, first, because it takes into account the complex and difficult nature of negotiating a settlement agreement as well as a blameless third party's burden in enforcing a settlement agreement. Settlement disputes can arise if a recalcitrant attorney agrees to settle an action contrary to the express instructions of his or her client. Likewise, an attorney mistakenly may believe his or her client has authorized a settlement. Finally, a client may renege on a commitment to settle after authorizing his attorney to reach an agreement. Under the doctrine of express authority, the impact of such contests regarding the validity of a settlement falls disproportionately on a third party who relies upon an opposing party's attorney's acts and representations. This is due to the fact that a third party engaged in the settlement of a dispute seldom knows whether the opposing party's attorney is acting with the express authority of his or her client. Furthermore, in enforcing a settlement agreement, a third party may find proving express authority difficult, as the proof necessarily will involve dealings between the client and his or her attorney to which the third party was not privy and which

may be protected by the attorney-client privilege. *See generally*, Grace M. Giesel, *Enforcement of Settlement Contracts: The Problem of the Attorney Agent*, 12 Geo. J. Legal Ethics 543, 543–44 (Spring 1999).

The doctrine of apparent authority as set forth in the Restatement (Third) of the Law Governing Lawyers alleviates, at least to some degree, these practical difficulties that are manifest in the settlement of disputes and the shortcomings of the express authority doctrine. Under the doctrine of apparent authority a third party bases enforcement of a settlement agreement upon the statements and conduct of the opposing attorney's client. Therefore, if the third party is reasonably misled by the client's communications or manifestations that the client's attorney is authorized to bind the client to a settlement agreement, then it is the client who must bear the burden for misleading. By adopting the apparent authority doctrine, a balance of interest between the parties is maintained where clients retain ultimate control over settlement issues yet, at the same time, reasonable third parties are protected.

Second, I believe that the apparent authority doctrine is more in line with our Court's strong and historic public policy of encouraging the settlement of disputes. *Muhammad v. Strassburger, et al.*, 526 Pa. 541, 587 A.2d 1346, 1350–51 (1991). Under the doctrine of apparent authority, if a client's communications or manifestations are reasonably interpreted to mean that the client's attorney has the authority to settle the dispute, any settlement agreement entered into by the client's attorney will be enforceable against that client. This approach also will reduce the ability of a client to renege on settlement after an agreement is reached.[2]

Thus, for the reasons stated above, I join the majority opinion, but additionally would prospectively adopt as the law

---

**2.** Scholarship has endorsed this approach to the enforcement of settlement agreements. *See e.g.* Giesel, 12 Geo. J. Legal Ethics at 590; Parness and Bartlett, *The Authority of Illinois Lawyers to Settle Their Client's Civil Claims: On Principles Not Quite Settled*, 31 Loy. U. Chi. L.J. 199, 220–21 (Winter 2000).

of our Commonwealth the Restatement (Third) of the Law Governing Lawyers § 27.

Justice NEWMAN joins this concurring opinion.

Justice EAKIN, concurring.

I concur with the result in this case; however, I write separately because I believe the majority opinion is too far-reaching and, therefore, advisory in nature.

The majority pronounces the proper rule of law: "an attorney can only bind his client to a settlement based on express authority." Majority op., at 792. Here, the attorney for appellants did not have such express authority to settle the case; the attorney stated "I don't have client consent" in the very voicemail construed below as an "offer." As such, the majority's thoughtful analysis balancing the equities in this case is an unnecessary step—the absence of express authority ends the inquiry.

In *Rothman v. Fillette,* 503 Pa. 259, 469 A.2d 543 (1983), this Court was asked to determine which innocent party should bear the loss resulting from fraud perpetrated by Rothman's attorney. *Id.,* at 544. Here, there was no fraud perpetrated upon either party, and there was no loss; one party merely tried to benefit from the statements of another's counsel made during settlement negotiations. Insofar as that decision has been interpreted to allow apparent authority to bind the client in a case without fraud, it is rightly rejected. However, as the finding that apparent authority existed here is in error, resolving this issue might better wait for another day.

Justice BAER joined.