NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1420
_____

GEORGE J. PISARZ, JR.,
                                        Appellant
v.

PPL CORPORATION
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-10-cv-01432)
District Judge:  Hon. Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 19, 2015

Before:  SMITH, JORDAN, and SLOVITER, *Circuit Judges*.

(Filed: March 24, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Appellant George Pisarz asks us to reverse an order of the United States District

Court for the Middle District of Pennsylvania compelling enforcement of a settlement

agreement with his former employer PPL Corporation ("PPL").  We will affirm.

_____

        * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

## I.      Background

In 2008, Pisarz stopped working at PPL due to a work-related injury for which he obtained worker's compensation benefits in 2010. Pisarz initiated an employment discrimination action against PPL in 2010 in the United States District Court for the Middle District of Pennsylvania, alleging discrimination on the basis of disability and age. He retained the law firm of Kolman Ely, P.C., to represent him in the litigation. Attorney Laura Siegle, an associate at Kolman Ely, initially handled the case. She had both in-person and telephonic conversations with Pisarz regarding settlement. According to Siegle's testimony before the District Court, Pisarz never informed her that he would not resign or retire in connection with any settlement or that he wanted his pension and insurance benefits to continue after the case was settled.[1] On September 12, 2012, following consultation with Pisarz, Siegle made a settlement demand on PPL for $250,000. After she made the demand, Pisarz called her at her office and directed her to double the demand to $500,000, which she did. Pisarz concedes that the demands were in terms of "money only" and that he never placed any other conditions on the demands. (App. at 89-90.) Siegle informed Pisarz that his pension would continue to accrue "until the date of settlement." (App. at 25.) After PPL rejected the initial demand, Siegle made another "money only" demand for $300,000, as authorized by Pisarz.

---

[1] In moving for the enforcement of the settlement agreement, PPL sought the production of certain documents over which Pisarz attempted to claim attorney-client privilege. The District Court ruled, however, that by denying he provided his attorneys with the authority to settle the case, Pisarz had placed the attorney-client communications at issue. (District Docket Entry No. 104.) That ruling has not been challenged on appeal.

2

The parties attended a settlement conference with the Honorable Yvette Kane at which Siegle communicated a purely financial settlement demand to PPL in front of Pisarz and Judge Kane. Pisarz did not object to the demand, express concerns about the pension, or indicate that Siegle lacked authority to settle the case.

Pisarz became difficult for Siegle to deal with, so Timothy Kolman, another attorney at Kolman Ely, took control of the case against PPL. Kolman testified that Pisarz never informed him that he would not resign or retire in connection with any settlement or that he wanted his pension and insurance benefits to continue after the case was settled. Pisarz rebuffed Kolman's attempts to discuss the case against PPL, prompting Kolman to send a letter to Pisarz in October 2012 in which Kolman admonished Pisarz that "[y]ou simply do not seem to listen or accept any of our advice and you are not interested in understanding the laws and principles that apply to your case." (App. at 193.) In that letter, Kolman told Pisarz that "[t]his firm, through great efforts, has persuaded Defendant PPL to pay the significant sum of $125,000. They have agreed to full pension accrual (as though you had been working to date.)." (*Id.* at 191.) Kolman further cautioned Pisarz that "the firm is ... of the belief that it cannot ethically proceed in representing you by making demands of [PPL] that far exceed your damages and which are not based in law, logic, or fact." (*Id.* at 193.) Finally, Kolman wrote that the firm was not "a vessel through which you may pursue vexatious litigation in order to satisfy any personal vendetta you may have against PPL ... ." (*Id.*)

A few days after sending the letter, Kolman and Pisarz spoke by phone and discussed settlement with PPL. Pisarz manifested an understanding that his pension

3

would accrue up to the date of settlement, which would also be the date of his retirement. Kolman recorded the end of the telephone call, in which he confirmed that he and Pisarz had discussed the case and that Pisarz was giving Kolman the authority to settle the case for a minimum of $125,000. No reference was made to pension terms or continued employment with PPL.

On October 11, 2012, Kolman and PPL reached a verbal agreement to settle Pisarz's case for $145,000 and certain other standard terms. The attorney for PPL memorialized the terms in an email and sent them to Kolman, who replied "This is confirmed."[2] (App. at 239.) The next day, Kolman sent Pisarz a letter informing him that his "case is resolved for $145,000 including the pension portion previously communicated." (App. at 240.) The letter also made reference to a previous conversation with Pisarz's wife in which Kolman relayed the settlement terms. Pisarz responded to that communication by sending a letter to Kolman on October 18, 2012, asking for the settlement agreement to be clarified to state that his "pension will continue to accrue as it was prior to the lawsuit." (App. at 252.) Kolman understood that letter to

---

[2] In pertinent part, PPL's email read:

> Please allow this e-mail to confirm Mr. Pisarz's acceptance of PPL's settlement offer of $145,000 (one hundred forty five thousand dollars) in full and complete settlement of any and all claims, including claims for attorney's fees, interest, costs, etc. Mr. Pisarz will also receive pension credit for years of service from 2008 through the date of agreement (which will be deemed his retirement/resignation date). Mr. Pisarz's acceptance of this offer includes the execution of a general release and settlement agreement, which we will prepare, as well as all non-financial terms and conditions previously discussed.

(App. at 239.)

4

request that the PPL settlement provide that Pisarz's pension would continue to accrue to the date of settlement because that is what he had previously discussed with Pisarz. Thus, he did not take any action in response to the letter, as that provision was already contained in the settlement agreement. PPL's attorney notified the court that the matter had been resolved by the parties subject to the execution of a settlement agreement. On November 7, 2012, PPL forwarded to Kolman a copy of the settlement agreement, which Pisarz refused to sign. Pisarz objected to the agreement because it required him to retire as of the date he executed the settlement agreement and his pension credit would continue to accrue only through that date.

On December 28, 2012, PPL moved to enforce the settlement agreement. The District Court denied the motion and scheduled an evidentiary hearing. At the hearing, Siegle, Kolman, and Pisarz testified. After the hearing, the District Court granted PPL's motion to enforce the settlement and dismissed the case with prejudice.

## II.    Discussion[3]

Pisarz raises three objections to the District Court's enforcement of the settlement agreement: (1) that the Court erred in applying the standard for apparent authority rather than actual authority, (2) that the Court erred in holding that settlement was not conditioned upon Pisarz's signature, and (3) that the Court's factual findings were clearly erroneous because they omitted several key facts. None of those objections has merit.

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and we review its legal determinations de novo. *Tiernan v. Devoe*, 923 F.2d 1024, 1031, 1032-33 & n.5 (3d Cir. 1991).

5

### A.    Standard for Express Authority

The law in Pennsylvania "is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement." *Reutzel v. Douglas*, 870 A.2d 787, 789-90 (Pa. 2005).[4] "The rationale for [that] rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." *Id.* at 790. Accordingly "a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf." *Id.* (citing Restatement (Second) of Agency § 7 cmt. c (1958)).

Pisarz argues that, because the District Court cited to Comment b of the Restatement (Second) of Agency § 7, it improperly used the standard for apparent authority rather than for express authority. We disagree. First, the District Court cited to Comment b only for the proposition that, if an attorney obtains the client's express authority to settle a case but the client maintains some secret or unexpressed reservation or belief, "attorneys are not expected to be telepathists." (App. at 253.) Further, the District Court found, after conducting an evidentiary hearing and reviewing all of the

---

[4] We apply Pennsylvania law to the enforceability of the parties' settlement agreement. *Tiernan*, 923 F.2d at 1033 & n.6. "The enforceability of settlement agreements is governed by principles of contract law." *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement]." *Id.* "Where the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such agreement." *Id.*

6

evidence, that "Pisarz granted Kolman Ely express authority to reach the October 11, 2012 settlement with PPL." (App. at 254.) Based on the record presented to us, that factual finding is not clearly erroneous.

Even if the District Court had applied the incorrect legal standard, we conclude on the facts presented here that Pisarz granted Kolman express authority to settle his case with PPL. *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011) (we may affirm a district court for any reason supported by the record). Pisarz expressly authorized his attorneys to settle his claim for a lump sum and, indeed, one such settlement demand was made in his presence. Both Siegle and Kolman testified that Pisarz never indicated a desire to remain on the payroll at PPL or to have his pension continue to accrue indefinitely. The record here, taken as a whole, indicates that Pisarz previously and repeatedly sought to change his settlement demands, but his past inconstancy is no defense to the agreement he finally authorized. "Having second thoughts about the results of a valid settlement agreement does not justify setting [it] aside." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (alteration and internal quotation marks omitted). Pisarz offered only his own conflicting and unsupported testimony to rebut the substantial evidence that he gave express authority to his attorneys. Accordingly, his effort to avoid the results of the exercise of that express authority fails.

**B.    Signed Agreement**

Pisarz next argues that the settlement agreement is invalid because its enforceability was conditioned upon his signature, which he refused to provide. He is wrong. "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the

7

parties, whether or not made in the presence of the Court, and even in the absence of a writing." *Cooper-Jarrett, Inc. v. Cent. Transp., Inc.*, 726 F.2d 93, 96 (3d Cir. 1984) (internal quotation marks omitted). Pennsylvania law provides that, when the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement. *E.g.*, *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986) (applying Pennsylvania law). Even the inability of the parties to reduce their agreement to writing after several attempts does not necessarily preclude a finding that their oral agreement was enforceable. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999).

Here, the parties agreed that PPL would make a $145,000 payment to Pisarz in exchange for, *inter alia*, his releasing PPL from further liability. The parties confirmed the terms of the settlement in an email exchange between Kolman and PPL's attorney. The language of the email between counsel, while not necessary to our holding that a valid, binding settlement agreement existed, makes unambiguously clear that Kolman, acting on Pisarz's behalf, accepted PPL's offer to settle the case on a set of enumerated and definite terms and that there was valid consideration. *Grossman*, 795 F.2d at 299 ("Applying Pennsylvania law, then, we must ask (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration."). Nothing in the record or in the exchanges between the parties suggests that Pisarz's signing of the agreement was a condition precedent to the agreement. *See Wineburgh v. Wineburgh*, 816 A.2d 1105, 1109 (Pa. Super. Ct. 2002) ("While the parties to a contract need not

8

utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." (internal alteration and quotation marks omitted)). The settlement documents rather were to memorialize the terms of an already-reached agreement, and Pisarz's obligation to sign the release was part of what he had agreed to do.

### C. Clearly Erroneous Factual Findings

Finally, Pisarz contends that the District Court erred in its factual findings by "fail[ing] to make certain findings pertaining to undisputed facts." (Opening Br. at 23 (emphasis omitted).) Specifically, Pisarz argues that the District Court failed to find that (1) neither Siegel nor Kolman fully understood the ramifications of the agreement with PPL on Pisarz's pension accruals, health insurance, and worker's compensation; (2) Pisarz's attorneys did not advise him that accepting the agreement would lead to PPL's decreasing his worker's compensation benefits; (3) his worker's compensation benefits would have increased over time; (4) Pisarz provided undisputed testimony that PPL would pay for his health insurance as long as he was on worker's compensation; (5) Pisarz continually "chopped and changed" his demands; (6) Kolman advised Pisarz that if he continued being dilatory in signing the agreement PPL may file a motion to compel; (7) the settlement offer required Pisarz to execute various documents; (8) PPL's letter to the District Court indicated the case was settled subject to the execution of a settlement agreement; (9) PPL's attorney sent to Kolman a copy of the settlement agreement; and (10) the settlement agreement contained a revocation provision, allowing Pisarz to revoke

9

the settlement agreement up to seven days after he executed it. (Opening Br. at 23-26.) None of those claimed omissions from the District Court's fact-finding are a basis for the relief Pisarz seeks.

The Court's ruling makes clear that it appreciated that Pisarz continually "chopped and changed" his demands, that PPL's letter to the District Court indicated the case was settled subject to the execution of a settlement agreement, that PPL's attorney sent to Kolman a copy of the settlement agreement, and that the settlement agreement contained a revocation provision. Thus, those facts were not omitted, and there is no error, clear or otherwise. Moreover, while the remaining assertions of fact, if true, may reveal something about Pisarz's view of the quality of Kolman Ely's work or the wisdom of his continuing to pursue his lawsuit, they are not relevant to whether he gave his express authority to enter into the settlement agreement or to whether his signature was a condition precedent to the agreement. Accordingly, there is no basis to say that the District Court clearly erred in failing to mention legally irrelevant facts, even assuming that they are facts.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

10