J-A08034-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID HATCHIGIAN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RAYMOND QUAGLIA, ARNOLD | : | |
| DRANOFF, DRANOFF & PATRIZIO, | : | |
| P.C., STEVEN G. LEVENTHAL, REGER | : | |
| RIZZO & DARNALL, AND TRAVELERS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Appellees | : | No. 1519 EDA 2017 |

Appeal from the Order Dated April 5, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2017 No. 00576

| | | |
|---|---|---|
| DAVID HATCHIGIAN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| RAYMOND QUAGLIA, ARNOLD | : | |
| DRANOFF, DRANOFF & PATRIZIO, | : | |
| P.C., STEVEN G. LEVENTHAL, REGER, | : | |
| RIZZO & DARNALL, AND TRAVELERS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Appellees | : | No. 1525 EDA 2017 |

Appeal from the Order Dated April 5, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2017 No. 00576

| | | |
|---|---|---|
| DAVID HATCHIGIAN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |

J-A08034-18

<table>
<tr><td></td><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td></td><td>:</td><td></td></tr>
<tr><td colspan="2">RAYMOND QUAGLIA, ARNOLD</td><td>:</td><td></td></tr>
<tr><td colspan="2">DRANOFF AND DRANOFF & PATRIZIO,</td><td>:</td><td></td></tr>
<tr><td colspan="2">P.C., AND STEVEN G. LEVENTHAL AND</td><td>:</td><td></td></tr>
<tr><td colspan="2">REGER RIZZO AND DARNALL, AND</td><td>:</td><td></td></tr>
<tr><td colspan="2">TRAVELERS INSURANCE COMPANY,</td><td>:</td><td></td></tr>
<tr><td></td><td></td><td>:</td><td></td></tr>
<tr><td></td><td>Appellees</td><td>:</td><td>No. 1528 EDA 2017</td></tr>
</table>

Appeal from the Order Dated April 5, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2017 No. 00576

BEFORE:   PANELLA, LAZARUS, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MAY 07, 2018**

David Hatchigian *pro se* has filed three separate appeals from three trial court orders entered on April 5, 2017.[1] Specifically, Hatchigian appeals from (1) an order denying his motion to invalidate a settlement agreement as to Raymond Quaglia, Esquire, Arnold Dranoff, Esquire, and Dranoff & Patrizio, P.C.; (2) an order granting a motion to enforce settlement filed by Farmington Insurance Company, which Hatchigian has incorrectly identified as Travelers Insurance Company;[2] and (3) an order denying Hatchigian's motion to

_____

[1] On June 20, 2017, this Court *sua sponte* consolidated these appeals.

[2] It appears that Farmington is the correct party to this action, and we will be using Farmington throughout this memorandum.

*Retired Senior Judge assigned to the Superior Court.

- 2 -

invalidate a settlement agreement as to Steven Leventhal, Esquire, and Reger, Rizzo & Darnall, P.C. (RRD). We affirm all three orders.

In 2005, Hatchigian was involved in an accident. He filed a lawsuit and was represented by Frank Marcone, who later was disbarred. Then, Raymond Quaglia, Esquire, took over the prosecution of the case. The case settled, and the full amount was deposited into Quaglia's account. "[T]hen there was a dispute over whether or not [] Quaglia had the authority to sign [] Hatchigian's name on the [settlement] check." N.T., 3/29/2017, at 9. Hatchigian made a claim to the bank regarding this purported forgery. Quaglia, represented by Arnold Dranoff, Esquire, of Dranoff & Patrizio, then instituted a libel lawsuit against Hatchigian (Libel lawsuit). Attorney Steven Leventhal, on behalf of Farmington Insurance Company, who was the homeowner's insurance carrier for Hatchigian, entered his appearance to defend Hatchigian in the Libel lawsuit. Hatchigian filed a counterclaim asserting that Quaglia overcharged Hatchigian for attorney's fees. The Libel lawsuit settled with Farmington paying $22,000 to Quaglia, and Quaglia paying $7,000 to Hatchigian for the overcharge of attorney's fees.

Dranoff wrote a check to Hatchigian for $7,000 on Quaglia's behalf, which Hatchigian refused to cash because he challenged the validity of the settlement in the Libel lawsuit. That check was then held until the case ended. Eventually, this Court upheld the validity of the settlement in the Libel lawsuit, and on November 25, 2014, our Supreme Court denied Hatchigian's petition

for allowance of appeal. *Quaglia v. Hatchigian*, 104 A.3d 5 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 106 A.3d 151 (Pa. 2014).

Dranoff then put a stop payment on the check because Hatchigian would not sign the release for the Libel lawsuit.  Dranoff told Hatchigian that he would issue a new check when the release was signed.

In September 2015, Hatchigian filed the instant lawsuit against Quaglia, Dranoff, Dranoff & Patrizio, Leventhal, RRD, and Farmington.[3]  He asserted numerous claims, but the crux of the lawsuit is Hatchigian's contention that he did not receive the $7,000 in settlement funds and that all of these parties engaged in fraud and bad faith.

Hatchigian was deposed in connection with this case on January 4, 2017, at Dranoff's office.  At that deposition, William Hobson, Esquire, appeared on Hatchigian's behalf.[4]  Hobson represented to everyone present, including Hatchigian, that "[i]f we can get a check for $7000, we'll sign any release. We'll dismiss all counterclaims and the whole litigation will go away." N.T., 1/4/2017, at 9.  Hatchigian testified that he will "sign whatever [Dranoff]

_____

[3] Hatchigian subsequently filed another lawsuit naming all of these parties, as well as Quaglia's wife, Regina Quaglia, as defendants.  The trial court dismissed that case based upon the doctrine of *lis pendens*. Hatchigian appealed that order to this Court.  On June 20, 2017, this Court affirmed that order. *Hatchigian v. Quaglia*, 174 A.3d 86 (Pa. Super. 2017) (unpublished memorandum), *appeal denied*, 179 A.3d 452 (Pa. 2018).

[4] Hobson had not formally entered an appearance on behalf of Hatchigian. *See* N.T., 1/4/2017, at 4. He also stated at the deposition that if the case did not settle that day, he would "be in" for the rest of the case. *Id*. at 14, 105.

wants" if he gets paid. *Id*. at 96. Furthermore, Hatchigian "agreed to drop all of the litigation once" he gets "the money in [his] hand." *Id*. at 98.

In addition, counsel for Farmington stated that he had "authority to forgo collection of $2000 in sanctions in exchange for dismissal of the current actions … and release of all claims … related to this." *Id*. at 101. Hobson agreed, reiterating his position that all Hatchigian was "looking for … is the original $7000." *Id*. at 102. Similarly, Hobson agreed to not pursue any claims against Leventhal and RRD for "a release on the sanctions." *Id*. at 101.

Subsequently, on January 19, 2017, a settlement conference was held. At that conference, Hatchigian, in exchange for payment of the previously-owed $7,000, signed a form releasing all claims against Dranoff, Dranoff & Patrizio, P.C., and Quaglia. On January 23, 2017, Dranoff sent a $7,000 check and a letter to Hatchigian by certified mail. A receipt indicating the delivery of the letter and check was returned to Dranoff on January 31, 2017.

On January 30, 2017, Leventhal and his law firm filed a motion to enforce the settlement agreement reached at the January 4, 2017 deposition. On February 2, 2017, Farmington filed a similar motion. On March 5, 2017, Hatchigian *pro se* filed a motion to invalidate settlement agreements as to all defendants. On March 29, 2017, the trial court held a hearing on these motions. At the hearing, Hatchigian appeared *pro se*. At the close of the hearing, the trial court resolved all claims, concluding that a settlement had been reached as to all parties. Specifically, the trial court concluded that

Hatchigian was not credible in his representations to the trial court that Hobson did not have the authority to enter into these settlement agreements and that Hatchigian did not receive the $7,000.

Hatchigian filed timely notices of appeal from the aforementioned orders. Both Hatchigian and the trial court complied with Pa.R.A.P. 1925.

On appeal, Hatchigian has set forth four issues for our review. Hatchigian's Brief at 10.

1. Whether the court erred by extrapolating a release as to all Defendants based on the contents of the Dranoff Release.

2. Whether [Hatchigian] was permitted to withhold any release as to [RRD] and Farmington until all preconditions to the release were met.

3. Whether the court erred by inferring a full release from the non-specific assurances of [Hatchigian's] deposition attorney.

4. Whether the court erred when it failed to restore this action to the calendar so that it could be scheduled for a [j]ury [t]rial.

Hatchigian's Brief at 10 (answers omitted).

While Hatchigian's argument is difficult to decipher, it appears to boil down to the following contentions: 1) that Attorney Hobson did not have the authority to settle this case; 2) that even if Attorney Hobson did have the authority to settle this case, he only did so as to Quaglia, Dranoff, and Dranoff & Patrizio, P.C.; and, 3) that the trial court should have put this case back onto the trial list. Hatchigian's Brief at 14-24.

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the

trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to reevaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. Settlement agreements are enforced according to principles of contract law. There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum).

***Step Plan Servs., Inc. v. Koresko***, 12 A.3d 401, 408–09 (Pa. Super. 2010) (internal citations and quotation marks omitted).

Here, the trial court concluded that Hatchigian, "through his counsel, clearly agreed to settle and release all claims against" Quaglia, Dranoff, and Dranoff & Patrizio, P.C., "and all other pending matters" in exchange for those parties agreeing not to collect the $6,000 in sanctions from Hatchigian that they had been awarded by the trial court. Trial Court Opinion, 10/5/2017, at 7. The trial court also concluded that Hatchigian "agreed during his January 4, 2017 deposition that he would dismiss the entire case and release all defendants once he received the $7,000 he was seeking." ***Id***.

The law in this jurisdiction is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement. The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal

rights, and such rights should only be forfeited knowingly. As such, a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf.

*Salsman v. Brown*, 51 A.3d 892, 894 (Pa. Super. 2012) (quoting *Reutzel v. Douglas*, 870 A.2d 787, 789-90 (Pa. 2005)).

Here, when Hobson offered to settle the case, Hatchigian was sitting right next to him. Thus, it is disingenuous for Hatchigian to contend now that Hobson did not have this authority. Moreover, the representations of Hobson and Hatchigian at the hearing confirm this conclusion.

Hobson told the trial court that his "goal was to resolve this matter and [he] felt that if [Hatchigian] got his $7,000 back and the sanctions would be dropped," the litigation would be over. N.T., 3/29/2017, at 32. However, Hobson further explained that as they were leaving the deposition, Hatchigian told Hobson that Hatchigian still wanted to pursue the "litigation." *Id*.

At the hearing, Hatchigian represented to the trial court that "there was no settlement that day." *Id*. at 42. Moreover, Hatchigian claimed that he did not receive the $7,000 check or the letter, which was sent by Dranoff & Patrizio, P.C. *Id*. at 56. Specifically, Hatchigian claimed it was not his signature on the signature card that was included in the certified mail receipt. However, the trial court concluded that Hatchigian "is simply not credible." *Id*. at 61. "Credibility determinations and consideration of conflicts in the evidence are within the purview of the trial court and such evidence should not be

reweighed on appeal." *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 703 (Pa. Super. 2003). Thus, we are bound by that determination.

Based on the record before this Court, it is evident that Hatchigian signed a release and received $7,000 in exchange. Moreover, he agreed to end the litigation as to all parties once that occurred. Hatchigian has prolonged this litigation long enough, and this Court will not permit him to renege on his promise once again. Therefore, we conclude that the trial court did not err in granting the petitions to enforce settlement and denying the motion to invalidate the settlement.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/18

- 9 -