ANDREW LYLE v. McKEESPORT ETC. R. CO.

O. PFENNINGHAUS v. McKEESPORT ETC. R. CO.

HENRY KNIPCAMP v. McKEESPORT ETC. R. CO.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON
PLEAS NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 8, 1889—decided January 20, 1890.
[To be reported.]

1. The clause of § 10, act of February 19, 1849, P. L. 83, prohibiting the construction of a railroad through "any dwelling-house in the occupancy of the owner or owners thereof," will not be construed to prevent the appropriation of a strip from the rear end of a town lot, when access to the lot for the carrying of supplies can still be had from the front.
2. In determining what is essential to the reasonable enjoyment of a dwelling-house, the question is a practical one; and regard must be had to that which is necessary, rather than to that which is desirable and convenient and depends alone on the will of the owner: Swift's App., 111 Pa. 516, and Damon's App., 119 Pa. 287, explained.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

Nos. 256, 257, 258 October Term 1889, Sup. Ct.; court below, Nos. 356, 357, 358 September Term 1888, C. P. No. 1 in Equity.

On July 19, 1888, Andrew Lyle and Catharine, his wife, filed a bill in equity against the McKeesport & Belle Vernon Railroad Company, praying upon the facts therein averred that the defendant company be enjoined "from entering upon or in anywise interfering with the messuage, tenement, dwelling-house, or homestead and curtilage appurtenant thereto, of your orators, described in this bill;" and for further relief. An answer to the bill having been filed, issue was joined, when the cause was referred to *Mr. N. S. Williams*, appointed examiner and master.

Like bills were filed, on the same day with the preceding, by Otto Pfenninghaus, and by Henry Knipcamp, guardian of

Anna May Freeman and others, charging like facts and pray-
ing the same relief. Answers having been filed and issue
joined, these causes also were referred to Mr. Williams as ex-
aminer and master.

From the testimony taken on the hearing, under the bill filed
by Andrew Lyle and wife, the master reported as follows:

FINDINGS OF FACT.

1. That Catharine Lyle, one of the plaintiffs, at the time of
filing plaintiffs' bill, was seised in fee of a certain lot of ground
and messuage, situate in the borough of Reynoldton, Allegheny
county, Pennsylvania, said lot having a front of forty feet on
Ruth street, and extending back, preserving the same width,
ninety-six feet to an alley sixteen feet in width, parallel with
said street and of same length.

2. That erected on said lot was a two-story frame dwelling-
house, thirty-two feet in length by sixteen in width; with a
small L or wing attached to the westerly side of the rear of the
house, seven feet in length by three in width. That the dwelling-
house stands twelve feet back from the south line of Ruth
street, and about three feet from the easterly side of the lot line.
That the distance from the house to the northern line of the
alley in the rear of the lot was fifty-two feet. That on the
rear of the lot, fronting on the alley, were located the follow-
ing out buildings: A coal house, six and one half feet by nine
feet; a cow-stable, eleven and a half feet by four and a half
feet; and a chicken-house four and one half feet by four feet.
About fourteen feet from the northern line of the alley was a
privy four feet by four feet.

3. That said buildings were used by the plaintiffs and their
family of seven children, at and for some time prior to the
filing of plaintiffs' bill, for the uses and purposes for which
said buildings were adapted, access to said buildings in the
rear being mainly from the alley.

4. That said lot on which said buildings were erected was
inclosed by a fence; said buildings being in one inclosure
and the land appropriated constituting part of the curtilage.

5. That the defendant company is a corporation incorpo-
rated in January, 1886, according to the provisions of an act of
assembly, approved April 4, 1868, entitled "An Act to author-

ize the formation of railroad companies;" having authority, under its articles of association, "to locate and construct a railroad beginning at Reynoldton, Allegheny county, Pa., and thence extending to and terminating at a point in, at, or near Belle Vernon, Fayette county, Pa.

6. That, by virtue of its authority, said defendant company proposes to construct and maintain a line of railroad for continuous use and operation between said points. That, in pursuance thereof, said company has appropriated sixteen feet by forty feet of plaintiffs' lot adjoining the alley aforesaid, and has removed the outbuildings above mentioned, having given bond in the sum of four hundred dollars to pay the damages occasioned thereby.

7. That, by reason of said appropriation, plaintiffs' lot is curtailed from its original size, forty by ninety-six feet, to forty by eighty feet, the distance from the dwelling-house to the right of way being thirty-six feet, the cow-stable, chicken-house and coal-house having been moved back off the right of way sixteen feet from original location toward the dwelling-house, and the privy moved back toward the house about two feet.

8. That the appropriation so made and the location of defendant's tracks for the purpose of maintaining and operating a railroad, have substantially shut off and prevented access to said building and lot by means of the alley, and that prior to said appropriation said alley was used by the plaintiffs in supplying their family with water, coal and provisions for family use; and, furthermore, that plaintiffs, at the time of filing bill, kept a cow to supply their family with milk, using the alley as a means of ingress and egress in driving the cow to the stable, and that since the appropriation plaintiffs have been obliged to sell their cow, having no means other than the front street of access to said stable to put the cow in the stable.

9. That said appropriation was made by the defendant company under its alleged power of eminent domain, and is without the consent of the plaintiffs.

10. That prior to filing of plaintiffs' bill, Barton & Barton, plaintiffs' attorneys, offered, on June 27, 1888, to sell to defendant company the strip appropriated.

### CONCLUSIONS OF LAW.

The first question for decision is: Have the plaintiffs estopped themselves from claiming equitable relief?

It is contended on the part of the defendant that the letter of Barton & Barton, written to Mr. Wainwright on June 27, 1888, prior to the filing of the bill, proposing to sell the strip appropriated for a money consideration, and the moving back of the buildings, had this effect; it tending to show that the plaintiffs considered the injury done them was of a nature for which damages could alone be properly sought, and not such as to interfere with the enjoyment of the premises as a dwelling-house.

In the opinion of the master this position is not well taken. Plaintiffs might have offered for a money consideration to permit the defendant company to take the dwelling itself, which offer not being accepted would clearly not estop them from claiming equitable relief by injunction. The offer was made by way of compromise and was not accepted, and for that reason cannot work as an estoppel. No authority is shown, outside the letter itself, for Barton & Barton to make the proposed sale. The authority of attorney to bind client by way of agreement or compromise is not inferred, but must be proven. See Isaacs v. Zugsmith, 103 Pa. 77, and authorities there cited. See also Brockley v. Brockley, 122 Pa. 1, and authorities there cited. For these reasons the master is of the opinion that plaintiffs are not estopped from claiming equitable relief.

The second, or main question then for decision is, was the land appropriated curtilage to and necessary for the reasonable enjoyment of said premises as a dwelling?

The evident intent of the prohibitive clause of the act of assembly was to secure the owner in the ordinary, proper and reasonable enjoyment of the house, as a residence, in view of its location and surroundings: Swift's App., 111 Pa. 523. To accomplish this purpose, the courts have extended the plain wording of the statute, " dwelling-house," to comprise so much of the curtilage as is requisite to afford the owner reasonable enjoyment of the house as a residence. The test is, not whether the owner can be compensated in damages, nor whether the house has been rendered uninhabitable by reason of the land appropriated. Only that portion, however, of the curtilage is exempted from appropriation which is necessary to the enjoyment of the house, not that which is simply desirable and convenient, dependent on the will of the owner: Damon's App., 119 Pa. 287.

The test as to how much of the curtilage is protected seems to be, does the proposed appropriation interfere with the ordinary, proper and reasonable enjoyment of the premises as a dwelling, considering its location and surroundings? In determining this question, the court has said that it must depend on the circumstances attending each particular case. In Swift's Appeal above cited, " the land to be taken is one corner of the rear end of the lot; it is one hundred and fifty-five feet from the nearest portion of the house." " It does not interfere with the use or enjoyment of any adjacent buildings or ornamental structures of any kind, nor with any shrubbery or beautiful lawn." " It in no manner prevents access to the street, nor causes any substantial objection to the building as a dwelling-house." In Damon's Appeal, also cited, it appears " that the ground taken is not within the same inclosure," and the master found that the ground taken " was not a part of the curtilage." " That the railroad at its nearest point was more than one hundred feet from the dwelling, and does not materially interfere with access thereto." " Moreover, no outbuilding was taken." " The taking of out-buildings has never, in this commonwealth, at least, been held a violation of the prohibitive words of the act of 1849, and we do not mean to intimate that it would or should be so held. But the fact that none are taken, etc., increases the difficulty of the appellant in his contention."

The facts of the present case differ considerably from either of the cases mentioned. As to the size of the lot in Swift's Appeal, the lot was a Philadelphia city lot, one hundred feet by two hundred and twenty-five feet. In Damon's Appeal, the property comprised forty acres, and was occupied as a country residence. In the present case the lot is forty feet by ninety-six feet, situated in the borough of Reynoldton, opposite McKeesport, in this county. In Swift's Appeal, the distance from the house to the proposed right of way was one hundred and fifty-five feet. In Damon's Appeal, the distance from the house to the right of way was over one hundred feet. In the present case it is thirty-six feet. In Swift's Appeal, the amount appropriated was 288 square feet. In the present case, the lot being about one sixth in size to that in Swift's Appeal, 640 square feet is appropriated. In both the above cited cases, the

outbuildings were not interfered with. In the present case the outbuildings, coal-house, cow-shed, chicken-house and privy were moved toward the house a considerable distance, considering the depth of the lot.

It is possibly true that the amount of land taken and the removal and re-location of the buildings would not in itself interfere with the reasonable enjoyment of the dwelling, so as to bring the case within the prohibitive portion of the act. In other words, the master is of the opinion that if the lot were simply curtailed by the appropriation made, sufficient would still remain to accommodate the buildings located upon it. In both the cases cited above, the court seems to have laid considerable stress upon the fact that access to the dwelling was not interfered with. In the present case, access to the buildings and to the lot itself, by means of the alley in the rear, is prevented by the appropriation for the purpose intended; and while it is true that plaintiffs could use the buildings for the same purpose for which they were used prior to the location of the railroad, by approaching them from the street in front, across the open side lot, yet it would be at the substantial destruction of the lot itself, cutting up the lot, destroying the grass and flowers. It seems to the master that the plaintiffs have the same right to be protected in the use of the alley in the rear, as they would have to the street in front; that one is as necessary for the reasonable enjoyment of the dwelling as the other, the alley being the every-day entrance for the supplies of the house, and the fact that the lot fronting on the alley having originally, in all probability, been decisive of its selection for the dwelling. The location of the railroad within such close proximity as thirty-six feet of plaintiffs' house, must of necessity be a constant menace to plaintiffs' personal safety, their family's and their property, much more than a mere inconvenience.

From a careful consideration of all the facts in this case upon reflection and study of the case, admitting that his original impressions have been considerably changed, the master is of the opinion that the appropriation of plaintiffs' land, the removal of the buildings and the proximity of the railroad to the house, and the cutting off of access to the alley, all taken together, clearly bring the case within the prohibitive section of the statute, as

defined in Swift's Appeal, and afterwards limited and qualified in Damon's Appeal. If the appropriation in this case is not an interference with the ordinary, proper and reasonable enjoyment of the house as a residence, considering its location and surroundings, then it would, indeed, be hard to exempt any part of the curtilage.

While the master recognizes the public character of the defendant company, and that a quasi-public corporation like a railroad should be protected in the fair enjoyment of their franchise and rights, yet where they exceed the almost sovereign power with which they are clothed by the commonwealth and invade the rights of a citizen, however humble, the duty then devolves upon the courts to restrain them as quickly and effectually as it would any private trespasser.

For the reasons above stated the master recommends the plaintiffs' bill be sustained, and that an injunction issue as prayed for.

A similar report was made in the other causes heard at the same time by the master. Exceptions to the reports were filed before the master and overruled by him. Being renewed before the court, the exceptions were dismissed on October 4, 1889, without opinion filed, and in each case a decree was signed enjoining the defendant as prayed for in the several bills. Thereupon the defendant company took these appeals assigning the dismissal of the exceptions and the decree awarding the injunctions for error. The cases were argued in this court together.

*Mr. James H. Reed* (with him *Mr. Phil. C. Knox* and *Mr. E. P. Douglass*), for the appellant:

The rule laid down in Damon's App., 119 Pa. 296, is that the curtilage to be exempted is that portion necessary to the enjoyment of the house, not that which is desirable or convenient, or which depends alone on the will of the owner. Tested by this rule, the cases at issue do not present such a state of facts as warrants the decrees of the court below. The dwelling-houses themselves are not interfered with, nor is their use for dwelling purposes in any way disturbed, except by the proximity of the railroad, which can be fully compensated in damages.

*Mr. A. J. Barton,* for the appellees:

The question in these cases is not whether the owners can

be compensated in damages, nor whether the houses have been rendered uninhabitable by reason of the land appropriated and the location of the railroad; but whether, considering the appropriation and location of the railroad, there is an interference with what is necessary for a reasonable and proper enjoyment of the houses, as residences, in view of their locations and surroundings. Tested by that rule, we find in each case a taking of the outbuildings, a cutting off of the alley in the rear and prevention of access thereto, the railroad being twenty feet six inches from the dwelling-house occupied by Mrs. Freeman and her children, as well as a taking of her kitchen; twenty-eight feet, from the dwelling-house of Pfenninghaus, and thirty-six feet, from the dwelling-house of Andrew Lyle: Swift's App., 111 Pa. 516: Damon's App., 119 Pa. 287.

## LYLE v. RAILROAD CO.

Opinion, Mr. Justice McCollum:

In the grant to railroad companies of the right of eminent domain there is a limitation, the nature and extent of which is the subject of this controversy. It virtually prohibits the location of a railroad " through any dwelling-house in the occupancy of the owner or owners thereof, without his, her or their consent." It is alleged that the McKeesport & Belle Vernon Railroad Company, in locating its road through the borough of Reynoldton, in Allegheny county, has exceeded its powers, and disregarded this limitation.

The appellees are the owners of a lot forty feet wide, fronting on Ruth street, in said borough, and extending from said street ninety-six feet, to an alley sixteen feet wide. Upon this lot there is a dwelling-house twelve feet back from Ruth street, and three feet from the easterly line of the lot. It is sixteen feet wide and thirty-five feet in length, with a wing attached to the westerly side of the rear of it, seven feet in length and three feet in width. Back of the dwelling-house are several small outbuildings, to wit, a coal-house, cow-stable, chicken-house, and privy. The appellant has appropriated for its railroad a strip of land sixteen feet wide and forty feet long adjoining the alley, moved the outbuildings in upon the lot, and given bond for the damage caused thereby.

It may be conceded that the location of the railroad is an in-

jury to this property, but it does not follow that it is in violation of the prohibitive clause in the act of February 19, 1849, P. L. 83, to which reference has already been made. The learned master says: " It is possibly true that the amount of land taken, and the removal and re-location of the buildings, would not in itself interfere with the reasonable enjoyment of the dwelling, so as to bring the case within the prohibitive portion of the act. In other words, the master is of the opinion that if the lot were simply curtailed by the appropriation made, sufficient would still remain to accommodate the buildings located upon it." He says, further, that " access to the buildings and to the lot itself, by means of the alley in the rear, is prevented by the appropriation for the purposes intended; and, while it is true that plaintiffs could use the buildings for the purposes for which they were used prior to the location of the railroad, by approaching them from the street in front, across the open side lot, yet it would be at the substantial destruction of the lot itself, cutting up the lot, destroying the grass and flowers."

We can readily see that access to the lot by means of the alley was a convenience to the owners, and added to its value ; but we cannot assent to the conclusion that an entrance from the front, along the westerly line of the lot, for the carriage of coal and other supplies, and for the necessary uses of the family, would destroy it. It might reduce the size of a grass-plot, or require the removal of a flower-bed; but these are not necessary to the enjoyment of a house as a dwelling. They are generally regarded as desirable adjuncts to a home, but their existence in attractive form, usually, if not always, depends on the will and effort of the owner or occupant of the premises. The law regards that which is essential to the enjoyment of a dwelling, and not that which is merely ornamental and pleasant in its surroundings. The location of a railroad across a lot on which the owner has his dwelling-house, or upon grounds which constitute part of a valuable country-seat, is not in violation of the statute: Swift's App., 111 Pa. 516; Damon's App., 119 Pa. 287. In determining what is essential to the reasonable use and enjoyment of a dwelling-house, the sentiments and attachments of the owner, springing from his own or his ancestors' long-continued possession of it, cannot be taken into

account. The question is a practical one, and in the decision of it regard must be had to that which is necessary, rather than to that which is desirable and convenient and depends alone on the will of the owner: Damon's Appeal, supra. In the cases cited the location of the railroad was sustained, but in each there was a reference to the fact that access to the property was not affected or materially impaired by it. This was, however, merely descriptive of the situation in those cases, and it did not lay down a rule that wherever a location interfered in any degree with the access to the dwelling-house it was prohibited. The only approach to many valuable residences in the cities and boroughs of the commonwealth is from the street in front of them, and yet a railroad may be located upon such street, and excavations or embankments may be made in the construction of such road, and the sole remedy of the owners of the lots is a proceeding under the act of February 19, 1849, to recover compensation for any damages they may sustain. In the present case, access to the appellees' lot from the rear is interfered with to no greater extent than if the road was located exclusively upon the alley.

We agree with the learned master that the amount of land taken, and the removal and re-location of the outbuildings, do not prevent the reasonable use and enjoyment of the dwelling, so as to bring the case within the prohibition of the statute. It is a case for damages, and not for an injunction.

> Decree reversed, and bill dismissed, at the cost of the appellees.

### PFENNINGHAUS v. RAILROAD CO.

OPINION, MR. JUSTICE McCOLLUM:

This case is almost identical with Lyle v. Railroad Co., just decided, and for the reasons there given,

> The decree is reversed, and the bill is dismissed, at the cost of the appellee.

### KNIPCAMP v. RAILROAD CO.

OPINION MR. JUSTICE McCOLLUM:

This case does not differ materially from Lyle v. Railroad Co., and is governed by the same principles.

> Decree reversed, and bill dismissed, at cost of appellees.

Statement of Facts.

On February 10, 1890, a motion for a re-argument of the foregoing cases was refused.