Brenda **BRANNAM**, Latasha Scruggs, and Willie Jessie, Appellants

v.

Police Officer Charles **REEDY**, and City of Philadelphia.

Commonwealth Court of Pennsylvania.

Argued June 8, 2006.

Decided Aug. 14, 2006.

Jeffry S. Pearson, Philadelphia, for appellant.

Craig R. Gottlieb, Philadelphia, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Brenda Brannam, Latasha Scruggs and Willie Jessie (collectively Appellants) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) denying their Motion to Strike the Order of Settlement. In this appeal we consider whether a trial judge can resolve a dispute about the existence of a settlement agreement by making findings of fact based on his own personal knowledge instead of conducting an evidentiary hearing on the points in dispute. We also consider whether an attorney who has apparent, but not express, authority can bind his clients to an oral agreement. Concluding that the trial court erred, we vacate and remand to the trial court for further proceedings consistent with this disposition.

On June 25, 2002, Appellants Brenda Brannam and Latasha Scruggs were involved in a motor vehicle accident in which their vehicle was rear-ended by a police cruiser driven by City of Philadelphia po-

lice officer Charles Reedy (Appellee).[1] As a result of the accident, Appellants Brannam and Scruggs sustained serious personal injuries. In June of 2004, Appellants initiated a tort claim against Reedy and the City (collectively Appellees).

In March of 2005, Appellees offered $3,000 to settle the case, but Appellants rejected this offer. On June 22, 2005, counsel for both parties met with the trial judge, Judge New, for a final pre-trial conference, at which time the parties agreed to engage in further settlement negotiations. Later that day, counsel negotiated a settlement in the amount of $210,000.[2] Following the conference, counsel for Appellants, Allen L. Feingold,[3] conveyed the substance of the settlement to his clients; they informed him that they would not agree to the settlement. The next day, June 23, 2005, Feingold sent a letter to the trial judge and to Appellees' counsel, informing them that he did not have the authority to settle the case and that the matter would have to proceed to trial. Also on June 23, 2005, the City Solicitor sent Feingold a letter memorializing the terms of the oral settlement and enclosing a general release for execution by Appellants. None of the Appellants has signed the proffered release.[4]

Following receipt of the letter that the oral settlement had been rejected by Appellants, the trial court entered an Order of Settlement on June 23, 2005. Three and a half months later, Appellants filed a Motion to Strike the Order of Settlement, which the trial court denied by order dated November 22, 2005.

On December 28, 2005, Appellants filed a Motion for Reconsideration. The trial court denied reconsideration as moot, and Appellants did not appeal from that order. Also, on December 28, 2005, Appellants filed a praecipe for the entry of judgment upon the trial court's order of November 22, 2005, and a notice of appeal from the judgment.

On February 16, 2006, the trial court issued an opinion explaining the basis for its denial of the Motion to Strike. The opinion recites that at the prehearing conference, the court asked Feingold if he had authority from his clients to accept a settlement offer, and Feingold replied in the affirmative. However, the verification attached to Appellants' Motion to Strike contradicts this recital. According to the verification, Feingold "told Judge New, and the attorney for the City that I would immediately contact the plaintiffs and speak to them about the offers, that it was up to them as to what they wanted to do, especially under these unusual circumstances and get back to the Judge and City by the next day [sic]." S.R.R. 75b.

Before this Court, Appellants raise two issues. First, they assert that the trial court erred in entering an Order of Settlement because a valid and enforceable settlement agreement was never reached. Second, Appellants contend that it was

1. Appellant Willie Jesse is party to this action as it was his vehicle, driven by his wife Brenda Brannam, which was damaged as a result of the accident.

2. A letter from Assistant City Solicitor Michele L.P. Dean, dated June 23, 2005, and addressed to Allen Feingold, explains that $200,000 was designated for plaintiff Brannam, while $10,000 was designated for plaintiff Scruggs for settlement of all claims and costs, including attorney's fees. Supplemental Reproduced Record 156b (S.R.R.——).

3. Appellants are now represented by Dora R. Garcia, Esquire.

4. On September 7, 2005, Assistant City Solicitor Dean sent another letter and General Release to be signed by Appellants. Again, the General Release was never signed by any of the Appellants. S.R.R. 160b–164b.

error for the trial court to resolve the factual dispute about the existence of the settlement agreement raised in their Motion to Strike without conducting an evidentiary hearing. Appellants request that we order a remand and, as further relief, order Judge New to be disqualified from conducting the remand hearing. Because we conclude that an evidentiary hearing on whether the parties reached a settlement is required, we do not decide Appellants' first issue, i.e., that a settlement was never effected. That determination belongs to the trial court.

■ Appellants contend that it is well established in Pennsylvania jurisprudence that before a settlement agreement can be enforced, its existence and terms must be beyond dispute. If there is a dispute, the court must conduct an evidentiary hearing to determine whether, in fact, a settlement was reached. Here, Appellants contend that because their counsel did not have authority to settle their claim, no settlement was ever effected.

Appellants are correct in their understanding of the judicial procedure to be followed in a case where the existence of a settlement is in dispute. Instructive here is an early *en banc* decision of this Court, *Redevelopment Authority of the City of Philadelphia v. L & A Creative Art Studio, Inc.*, 6 Pa.Cmwlth. 326, 294 A.2d 606 (1972). At issue in *Redevelopment Authority* was a stipulation signed by counsel for the authority and counsel for the landowner agreeing to condemnation damages in the amount of $115,000. The authority admitted that the stipulation document was genuine and that it was signed by its attorney. However, the authority denied that its counsel had been authorized to bind his principal. The trial court granted the landowner's petition to enforce the settlement based solely upon the petition and answer. It concluded that there was no genuine issue of fact and, therefore, an evidentiary hearing was not necessary. It further held that it would be against public policy to permit the authority to disavow the actions of its attorney. We reversed, directing the trial court to conduct an evidentiary hearing.

We held that to avoid an injustice to either party, an evidentiary hearing into the existence of the settlement was essential. *Id.* at 608. Finding Superior Court precedent to be persuasive precedent, we observed:

"That an evidentiary hearing into the existence and binding effect of the settlement agreement is the appropriate procedure to be followed in matters of contested settlement agreements has been clearly established by the courts."

*Id.* (quoting *Limmer v. Country Belle Cooperative Farmers*, 220 Pa.Super. 171, 286 A.2d 669, 670 (1971)).[5] Further, to determine whether the settlement was binding, it was not enough to establish that the authority's counsel had signed the settlement. Drawing upon hoary precedent, we

---

5. In *Limmer v. Country Belle Cooperative Farmers*, 220 Pa.Super. 171, 286 A.2d 669 (1971), the Superior Court was faced with a dispute as to the existence of a settlement. Ultimately, the court determined that it could not decide the issues presented to it on appeal, because "[n]o evidentiary hearing was held in the matter by the court below wherein the facts relied upon by both sides were placed in evidence by testimony of the parties and their witnesses." *Id.* at 670. The court reversed the trial court's order enforcing the settlement and remanded the case "for a prompt and full hearing into all the facts and circumstances surrounding the offer and acceptance of settlement, at which hearing counsel who represented plaintiff and defendants at the time of the alleged settlement agreement, together with all parties of interest and their witnesses, shall be present and be heard...." *Id.* at 673.

held that the " 'authority of [an] attorney to bind [his] client by way of agreement or compromise is not inferred, but must be proven.' " *Id.* at 607–608 (quoting *McKeesport & B.V.R. Co. v. Lyle* 131 Pa. 437, 440, 18 A. 1111 (1890)).

■ In short, Appellants are correct in their position that the existence of a settlement agreement requires an evidentiary hearing whenever one party disputes the existence of an agreement or its binding effect. An evidentiary hearing is "the appropriate procedure to be followed" even where there is a written agreement signed by counsel, if it is alleged that counsel lacked authority to so act.

The trial court believed that since Feingold asserted that he had authority to settle, it does not matter whether or not Feingold actually did have authority. Relying upon *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983), the trial court concluded that Appellants must bear the burden of their counsel's fraud. However, the facts in *Rothman* are such that its holding is not precedential here.

In *Rothman*, plaintiff's counsel informed the defendant's insurance company that his client had agreed to settle the case, even though he did not have such authority, and in fact, had never discussed the matter with his client. Relying on counsel's representation, the defendant's insurance company sent a check to plaintiff's attorney, made payable to plaintiff. When plaintiff's counsel received the settlement documents, he forged his client's name and pocketed the settlement money. The client then sought to recover those misappropriated funds from the insurance company that had relied on forged documents. The issue in *Rothman* was "who must bear the burden of loss between innocent parties where the attorney for one of the parties has acted beyond the scope of his authority and has misappropriated funds."

*Id.* at 262, 469 A.2d at 544. The Supreme Court held that "[w]here one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong." *Id.* at 265, 469 A.2d at 545. Accordingly, the defendant insurance company was excused from having to write another check.

In a subsequent decision, the Supreme Court explained that *Rothman* was a narrow holding, limited to its facts. In *Reutzel v. Douglas*, 582 Pa. 149, 158, 870 A.2d 787, 792 (2005), the Supreme Court explained that "*Rothman* was a particularly egregious case of attorney fraud and therefore warranted somewhat unusual treatment." The Court contrasted the facts in *Reutzel*, where the issue was whether an attorney could bind his client to a settlement, where the attorney had apparent, but not express, authority. The Supreme Court explained as follows:

> In contrast, in the instant case, while Appellees contend that Danielsen misled them as to his authority, they do not go so far as to characterize his conduct as fraud and indeed, it seems clear that Danielsen's representations to Appellees regarding settlement simply did not rise to that level. *In any event, unlike the attorney in Rothman, Danielsen certainly did not defraud his own client,* much less enter into a settlement by forging his client's signature and then pocketing the proceeds for his own use. As such, unlike the situation in *Rothman*, we are not faced with two defrauded parties, between whom we must apportion a loss. *Rothman*, 469 A.2d at 545 ("[W]here one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss."). In addition, the fact that the Reutzels were not defrauded is significant in the balancing of the

equities here, because defrauded clients like those in *Rothman* can oftentimes recover their losses from the Client Security Fund ... while the Reutzels, whose attorney did not defraud them, would not be entitled to such recovery. . . . Accordingly, although this Court determined in *Rothman* that agency and equitable principles required Mr. Rothman to bear the losses sustained by his attorney's misconduct, we conclude that these principles do not require a similar result here.

*Id.* at 158–159, 870 A.2d at 792–793 (footnote and citations omitted). As in *Reutzel*, the question here is whether by apparent authority, as opposed to express authority, Feingold could bind Appellants. The Supreme Court answered this question in *Reutzel* by holding that an attorney must have express authority to settle a case on behalf of a client; apparent authority does not suffice.

In sum, *Rothman* is *sui generis*. Its precedential value appears limited to the situation where a client is defrauded of money by the criminal misconduct of his attorney and seeks to be made financially whole by a third party. Here, neither party claims to have sustained a monetary loss. Neither party claims prejudice from having a settlement rejected one day after it was negotiated. Neither party claims that the collapse of the settlement impaired its ability to prepare for trial.[6]

The question here is not fraud but whether Feingold had authority to bind Appellants to the oral settlement negotiated with Appellees' counsel on June 22, 2005. This case is indistinguishable from *Redevelopment Authority*, where we held that if the existence of a settlement is in dispute because it is claimed that the attorney lacked authority to bind his client, the attorney's "authority ... to bind [his] client by way of agreement or compromise is not inferred, but must be proven." *Redevelopment Authority*, 294 A.2d at 607. The trial court erred, therefore, in deciding the Motion to Strike on the factual finding that Appellants' counsel stated to the court and to the opposing counsel that he had authority to settle. Feingold's authority to settle had to be proven, not inferred, once it was disputed in the Motion to Strike.

■ Appellants argue, further, that it was error for the trial court to base facts upon the judge's personal experience rather than upon the testimony of witnesses. We agree. This question has been presented to and squarely addressed by the Pennsylvania Superior Court. This precedent is persuasive and is followed here.

In *Houston–Starr Co. v. Virginia Manor Apartments, Inc.*, 294 Pa.Super. 571, 440 A.2d 613 (1982), a petition to enforce a settlement was filed. The terms of the settlement were denied by the respondent, and the trial court conducted a conference with counsel. Thereafter, without con-

6. Interestingly, in *Newton v. Supermarkets General Corporation*, 1989 WL 144104 (E.D.Pa.1989), the late Judge Waldman emphasized the significance of the "loss" concept to the holding in *Rothman*. He explained as follows:

Unlike this case, the defendant in *Rothman* would have sustained an irreparable loss had the court disregarded the settlement agreement. Here, defendant has not shown that it sustained any loss or detriment as a

result of its reliance on the apparent February 28 agreement. No witnesses have since become unavailable, no evidence has disappeared, and no settlement proceeds have been irretrievably forwarded. There is no "loss" to bear and neither party "must suffer."

*Id.* at *3. This analysis applies with equal force here. Feingold did not forge his clients' names on settlement documents and misappropriate client funds.

ducting an evidentiary hearing, the trial court entered an order vacating the settlement. The Superior Court reversed the trial court's decision. In doing so, the Superior Court relied upon its holding in *Limmer*[7] as well as the Commonwealth Court's holding in *Redevelopment Authority*. It held that the trial court's "intimate knowledge of the details of the settlement agreement" acquired at the prehearing conference did not dispense with the need for an evidentiary hearing. *Houston–Starr*, 440 A.2d at 615. It explained that

> we cannot review the lower court's actions because there was no testimony or findings of fact.... *The lower court's recitals in its order are not a substitute for a full record,* especially when the parties dispute the very circumstances under which the order was entered.

*Id.* (emphasis added). These are unassailable precepts. Meaningful appellate review cannot take place without a record.

More recently, the Superior Court again considered whether it was error for a trial court to grant a motion to enforce a settlement agreement without conducting an evidentiary hearing. In *Christian v. Allstate Insurance Company*, 348 Pa.Super. 252, 502 A.2d 192 (1985), the appellant denied that he had ever accepted Allstate's offer of settlement. Because the filings raised an issue of fact, the Superior Court held that an evidentiary hearing had to be conducted even if "no party requested a hearing. The matter cannot be decided without one." *Id.* at 194. Further, the trial court's failure to conduct a hearing cannot be "waived by a party's failure to object." *Id.* The Court explained that there must be an evidentiary hearing wherever a

court may be required to determine if an offer to settle was tendered, if it was accepted, *if counsel had authority to act,* the terms of the settlement and possibly other matters.

*Id.* (emphasis added). Accordingly, the Superior Court reversed and remanded the case for a full evidentiary hearing on the existence of the disputed settlement.

In sum, Pennsylvania appellate court precedent has not wavered on the principle that there must be an evidentiary hearing where there is a dispute about whether a settlement agreement exists. A hearing must be held where there is a signed agreement but one party asserts that his attorney lacked authority to bind his client, as in *Redevelopment Authority*. A hearing must be held where a settlement is vacated by court order, as in *Houston–Starr*,[8] or is enforced by court order, as in *Limmer*. A hearing must be held even though the trial court has "intimate knowledge" of the facts as a result of a prehearing conference because a trial court's recitals of fact are "not a substitute for a full record." *Houston–Starr*, 440 A.2d at 615. A petition and answer are not a substitute for a hearing (*Redevelopment Authority* ), and a hearing must be held even if no party asks for one (*Christian* ).

We deal here with a court order that was entered *sua sponte*. Even though Appellants' counsel promptly notified Appellees' counsel and the court that Appellants had rejected the settlement, the trial court entered an order marking the case as settled. When Appellants filed their Motion to Strike the Order of Settlement, the trial court stated that it conducted a "full review of the record." However,

7. *See* note 5, *supra,* for a discussion of *Limmer.*

8. The Superior Court stated that "[t]he need for a complete record is just as acute when we are reviewing an order vacating a settlement as when we are reviewing an order enforcing a settlement agreement." *Houston–Starr,* 440 A.2d at 615.

there was no record to review. The trial court's recital of what transpired, based upon his "intimate knowledge" that he acquired at the prehearing conference with counsel cannot substitute for a hearing where witnesses are heard. *Houston–Starr,* 440 A.2d at 615. We hold, therefore, that the trial court erred by ruling on Appellants' Motion to Strike without holding an evidentiary hearing.

■ Finally, we turn to Appellants' contention that upon remand, recusal of the trial judge is required. Fatal to Appellants' claim, however, is the fact that they are raising the issue of recusal for the first time on appeal. A motion for recusal must be raised in the first instance with the trial court, who must always be given the opportunity to act on the request in the first instance. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 220, 489 A.2d 1291, 1299 (Pa.1985). Appellants' claim for recusal of the trial judge is denied.

For these reasons, we vacate the order of the court below and remand for an evidentiary hearing, after which the trial court shall make findings of fact based on the record as to whether Feingold had express authority to bind his clients and whether a valid settlement agreement between the parties was effected.

## *ORDER*

AND NOW, this 14th day of August, 2006, the order of the Court of Common Pleas of Philadelphia County dated December 28, 2005, in the above captioned matter is hereby vacated and remanded for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.