2023 PA Super 259

| | | |
|---|---|---|
| JOHN G. KING | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER P. DRISCOLL | : | |
| | : | |
| Appellant | : | No. 1291 WDA 2022 |

Appeal from the Order Entered October 14, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD 21-004533

BEFORE: BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.: **FILED: DECEMBER 7, 2023**

Christopher P. Driscoll (Driscoll) appeals from the order entered in the Court of Common Pleas of Allegheny County (trial court) granting the petition to enforce settlement filed by Driscoll's former business partner, John G. King (King). According to Driscoll, the settlement agreement was not binding because it had been sent by his attorney to King without Driscoll's prior authorization. In our initial review of the settlement order, this Court remanded the case back to the trial court for additional findings as to whether Driscoll in fact authorized his attorney to send the proposed agreement to

_____

[*] Retired Senior Judge assigned to the Superior Court.

King.[1]  The trial court entered new findings in response, determining that Driscoll's attorney indeed had such authority.  *See* Trial Court 1925(a) Opinion, 9/13/2023, at pp. 4-9.  As the trial court's findings are supported by the record, we affirm.

The relevant facts and procedural history of the case have been previously summarized by this Court as follows:

> Driscoll and King are each 50% owners of two LLCs that operate a restaurant and its building in Bellevue near Pittsburgh.  When their business relationship soured, Driscoll wanted out of the business and asked King if he would be willing to buy Driscoll's membership shares.  As a result, both parties obtained counsel to negotiate the buy-out of Driscoll's shares in March 2021.  King hired Attorney David Fuchs and Driscoll hired Attorney Daniel Conlon.  The two attorneys began negotiations in March 2021 but were unable to reach an agreement.  The negotiations resumed several weeks later in May 2021.  During this round of negotiations, Attorney Conlon emailed Attorney Fuchs a term sheet summarizing their negotiations and asked, "if we are in agreement on all terms."  Attorney Fuchs responded by adding handwritten notes to the term sheet, and Attorney Conlon incorporated those notes into another draft that he sent to Attorney Fuchs a few days later.  Attorney Fuchs emailed him back with a "redlined" copy of the agreement "with mostly clarifications and a few details."  The next day, which was May 20, 2021, Attorney Conlon replied that he accepted most of the changes and had "sent the agreement to Driscoll for his review," while also highlighting those changes in the draft that he did not accept.  Attorney Fuchs responded that same day:  "Client has approved your redline.  Please get your client's signature and send me a clean copy for my client to sign."

---

[1] This Court explained in **King v. Driscoll**, 296 A.3d 1178, 1186 (Pa. Super. 2023), that it could not adjudicate the validity of the settlement agreement until the trial court first made findings of fact as to Driscoll's authorization.

Attorney Fuchs believed that they had an agreement but when Attorney Conlon did not send him back a clean copy for King to sign, Attorney Fuchs followed up with another email asking him to send a "clean version so we can get this done." Again, however, there was no response. Finally, when Attorney Fuchs tried again a few weeks later, Attorney Conlon emailed him a letter in which he asserted that "the parties have neither negotiated nor reached a settlement agreement." Attorney Conlon emphasized that he never represented that they had reached a settlement agreement, noting that in his last email, he wrote that he was sending the agreement to Driscoll for his review. Attorney Conlon also claimed that during a May 21st phone call, he told Attorney Fuchs that Driscoll needed a copy of the restaurant's RRF application before he would sign off on the agreement.

On June 16, 2021, King filed a petition to enforce settlement alleging that the parties, through their attorneys, had reached an agreement on all material terms despite never signing the agreement. Because Driscoll disputed that an agreement was reached, the trial court held an evidentiary hearing. At the hearing, Attorney Conlon testified that he negotiated the agreement on behalf of Driscoll but never had his express authority to agree to the terms of the agreement without Driscoll's final approval. Attorney Conlon also claimed throughout his testimony that Driscoll would not sign a final agreement unless he first obtained the restaurant's RRF application. Driscoll reiterated the same as he continually claimed throughout his testimony that Attorney Conlon could not finalize the agreement unless he obtained the RRF application that King submitted on the restaurant's behalf to the Small Business Administration.

Disputing that the RRF application was ever an integral part of the negotiations, King emphasized that neither the term sheet nor the draft agreements contained any mention about the application being an essential term of the agreement. On top of that, King called an accountant as a witness to show that the funds received from the SBA – $370,000 – had to be used for operating expenses and could not be used to pay Driscoll. Consequently, King characterized Driscoll's claim concerning the RRF application as a misleading, after-the-fact excuse for getting the agreement that he and Driscoll reached through their attorneys' extensive negotiations and exchange of term sheets and draft agreements. On July 21, 2022, the trial court granted King's petition to enforce settlement. In its two-page memorandum explaining its

reasoning, the trial court did not address whether Attorney Conlon had Driscoll's express authority to finalize the agreement without first obtaining the RRF application. Rather, the trial court concluded that, even though the agreement was never signed, "[t]he accepted redline version in conjunction with the term sheet establish[ed] the essential terms of the parties' agreement."

Following the trial court's decision, Driscoll timely moved for post-trial relief under Pa.R.Civ.P. 227.1. King responded by reasserting his arguments at trial but did not otherwise contend that Driscoll's filing was improper. After the motion was denied, Driscoll filed this appeal.

* * * *

On appeal, Driscoll raises two main arguments for why the trial court erred in concluding that the parties reached an agreement. First, he disputes that the attorneys' negotiations resulted in a binding, enforceable agreement. In particular, he focuses on the May 20th email that Attorney Conlon sent to Attorney Fuchs in response to the "redlined" draft of the agreement. In that email, Attorney Conlon wrote that he accepted most of Attorney Fuchs's changes and that he was sending the agreement to Driscoll for his review. Attorney Conlon, however, did not accept all of the changes, as he highlighted those with which he did not agree. Driscoll contends that this email shows not only that the attorneys had not yet agreed on all the necessary terms, but also that he had not yet approved the agreement.

Second, and related to the first part, Driscoll contends that he directed Attorney Conlon to obtain a copy of the restaurant's RRF application. Driscoll asserts that this was an essential part of the parties' negotiations and that he would not give his final approval to any agreement unless he first obtained and reviewed the application. Because he never received the application, he never gave Attorney Conlon the express authority he would have needed to finalize the agreement.

*King v. Driscoll*, 296 A.3d 1178, 1180-84 (Pa. Super. 2023) (footnotes and internal citations omitted).

"When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are

- 4 -

free to draw our own inferences and reach our own conclusions from the facts as found by the court." **Salsman v. Brown**, 51 A.3d 892, 893–94 (Pa. Super. 2012) (citation omitted). On appeal, the evidence must be interpreted in the light most favorable to the prevailing party. **See id**. This Court is bound by the trial courts findings of fact, as long as they are supported by competent record evidence. **See id**. The same is true as to the trial court's credibility determinations, as the trial court had the opportunity to view and assess the witnesses first-hand. **See Lewis v. Lewis**, 234 A.3d 706, 711 (Pa. Super. 2020) (citation omitted).

A settlement agreement is enforceable in the absence of a formalized writing where all the elements of a contract are met and the parties have orally "come to a meeting of the minds on all essential terms[.]" **Commerce Bank/Pennsylvania v. First Union Nat. Bank**, 911 A.2d 133, 147 (Pa. Super. 2006). However, while the settlement agreement need not be reduced to writing, an attorney must still have authority to settle their client's case. **See Baribault v. Zoning Hearing Bd. Of Haverford Twp.**, 236 A.3d 112, 122 (Pa. Cmwlth. 2020). Indeed, "[t]he ordinary employment of an attorney to represent a client with respect to litigation does not confer upon the attorney the implied or apparent authority to bind the client to a settlement or compromise, and the attorney cannot do so in the absence of such express authority." **Id**. (Citations omitted).

For an attorney to be granted authority to bind a client to a settlement agreement, express permission must be granted in definite terms:

> The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly. *See*, *e.g.*, *Starling*, 3 A.2d at 388 ("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him"). As such, a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf. *See* Restatement (Second) of Agency § 7 cmt. c (1958).

*Reutzel v. Douglas, M.D.*, 870 A.2d 787, 790 (Pa. 2005).

Where the validity of a settlement agreement is disputed based on an attorney's lack of authority, the agreement may only be deemed valid if the attorney's express authority has been proven. *See Brannam v. Reedy*, 906 A.2d 635, 640 (Pa. Cmwlth. 2006) (citing *Redevelopment Auth. of the City of Phila. v. L & A Creative Art Studio, Inc.*, 294 A.2d 606, 607 (Pa. Cmwlth. 1972)).

In the present case, the parties' dispute concerns whether Driscoll had approved a draft of a settlement agreement sent to and accepted by King on May 20, 2021. Although Driscoll had not signed a final version of the document, King contends that it was nevertheless a binding contract because Driscoll had agreed to all the material terms conveyed by his attorney.

The materiality of the RRF application is critical to our disposition because it settles the issue of whether Driscoll's attorney (Conlon) had express

authority to settle the case. Since Driscoll admits that he had agreed to all the terms that Conlon ultimately conveyed to King on May 20, 2021, it follows that if the disclosure of the RRF application was not a material term at that time, then its omission would be irrelevant, and the negotiation concluded once King accepted that version of the agreement on the same date.

As discussed above, King and Driscoll have presented conflicting interpretations of the record with respect to whether a settlement was contingent on the RRF application. Driscoll and his attorney (Conlon) both testified that Conlon was only authorized to settle the matter if an agreement required King's disclosure of that document. *See* Evidentiary Hearing Transcript, 2/14/2022, at p. 26; Evidentiary Hearing Transcript, 12/20/21, at pp. 12, 16-18. Conlon described this as "the central issue during the negotiations," and a "vital point" as of May 20, 2021, when all other material terms had been agreed to. *Id*, at pp. 20, 30.

But according to King, the settlement was not contingent on Driscoll's receipt of the RRF application, and the parties' mutual acceptance of the material terms on and before May 20, 2021 made the draft settlement binding. King pointed to the unrefuted testimony of J. Michael Sabatini, a CPA who testified before the trial court that RRF funds may only "be used in operations" such as payroll, supply costs, and maintenance of the restaurant. Evidentiary Hearing Transcript, 2/14/2022, at p. 5. Such funds could not legally be

dispersed to a business owner for personal profit or the purposes of a buy-out. *See id*., a p. 21.

King also emphasized that the communications between his attorney (David Fuchs) and Driscoll's attorney in May 2021 had resulted in a final agreement. On May 12, 2021, Fuchs emailed Colon following ongoing negotiations, declaring, "We have an agreement." Between that date and May 20, 2021, the attorneys repeatedly exchanged draft settlement agreements which indisputably contained revisions in the form, but not the substance, of the versions submitted by the other side. It was not until weeks later that Driscoll denied the existence of a final agreement in writing, citing the allocation of RRF funds as a reason to "reevaluate the sale price for his interest in the Companies[.]" Evidentiary Hearing Transcript, 12/20/2021, at p. 34.

The trial court construed the evidence in favor of King, discounting Driscoll's claim that any final agreement would be contingent on his receipt of the RRF application. In its supplemental opinion, the trial court concluded that Conlon had been given express authority to settle the case, and that the attorneys' exchange of final draft agreements had bound their respective clients. The trial court found that Driscoll's focus on the RRF grant was only an excuse to avoid finalizing the settlement with King after an agreement had already been reached. *See* Trial Court 1925(a) Opinion, 9/13/2023, at pp. 8-9.

The trial court reasoned that if Driscoll had truly considered the RRF application's disclosure to be a material term, then it would have been mentioned at least once in the several draft agreements circulated by Driscoll's counsel and reviewed by Driscoll himself:

> If the RRF grant were a material term to the agreement, it would be expected that in at least one of the draft term sheets or agreements, all of which were prepared by Driscoll's counsel, mention of the funds and the application would appear. However, it is undisputed that no document prepared by Driscoll as part of the resolution of this matter makes any mention of those documents. **Indeed, both Driscoll and his counsel testified that [Driscoll] was provided copies of all the agreements and documents circulated between the parties in this matter**. Notably, Driscoll has not produced any evidence demonstrating that the RRF application or funds were material in any way to the settlement reached in this matter. Therefore, it is clear to the Undersigned that there was a meeting of the minds between the parties which resulted in an agreement being reached.

*Id*. (internal record citations omitted, emphasis added).

We find that all the trial court's factual findings are supported by the record. Central to the trial court's findings are that Driscoll and his attorney both testified to the fact that Driscoll was kept well informed about developments in the settlement negotiations, and that he approved of all drafts of the settlement agreements sent to King. *See* Evidentiary Hearing Transcript, 12/20/2021, at p. 48; Evidentiary Hearing Transcript, 2/14/2022, at p. 29. This would include the draft of the agreement that King accepted on May 20, 2021.

While there is conflicting evidence as to whether Driscoll had directed King to make receipt of the RRF application a settlement condition, it was for the trial court to resolve that conflict, and this Court is bound by the trial court's finding of fact in that regard. **See Salsman**, 51 A.3d at 893–94. Driscoll's attempt to prove the import of the RRF application through his own statements and those of his attorney, was rejected by the trial court as a credibility determination that we find is supported by the record and now is binding on this Court. **See Lewis**, 234 A.3d at 711. As such, we discern no reason to disturb the trial court's conclusion that the attorneys for King and Driscoll negotiated a binding settlement agreement and that the disclosure of the RRF application was immaterial prior to the conclusion of their negotiations.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/7/2023