J-A18033-25        2026 PA Super 37

| | | |
|---|---|---|
| LIBERTY PROPERTY LIMITED PARTNERSHIP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2947 EDA 2024 |
| KENDALL HEATON ASSOCIATES, INC., BALA CONSULTING ENGINEERS, INC., F+P ARCHITECTS NEW YORK, INC., ROTTET STUDIO, LLC AND ROTTET ARCHITECTURE AND DESIGN STUDIO NY, PLLC, METROPOLITAN ACOUSTICS, LLC, TILLOTSON DESIGN ASSOCIATES, INC. | : | |

Appeal from the Order Entered October 17, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210901337

BEFORE:  OLSON, J., DUBOW, J., and BECK, J.

OPINION BY OLSON, J.:                    **FILED FEBRUARY 27, 2026**

Appellant, Liberty Property Limited Partnership ("Liberty"), appeals from the October 17, 2024 order entered in the Court of Common Pleas of Philadelphia County that made final, as discussed more fully *infra*, the trial court's August 31, 2023 order, which granted the motion to enforce a settlement agreement filed by Kendall Heaton Associates, Inc. ("Kendall Heaton") and denied Liberty's cross-motion to enforce a competing settlement agreement.  Upon careful consideration, we affirm the trial court's order enforcing the settlement agreement proffered by Kendall Heaton.

Liberty was the fee developer in the construction of the Comcast Technology Center ("the Center"), which is located in Philadelphia, Pennsylvania. As the fee developer, Liberty contracted with, *inter alia*, Kendall Heaton, Bala Consulting Engineers, Inc., F+P Architects, New York Inc., Rottet Architecture and Design Studio, NY, PLLC, Rottet Studio, LLC, Metropolitan Acoustics, LLC, and Tillotson Design Associates, Inc. (collectively, "Appellees") to provide construction services related to the Center. During construction of the Center, certain design defects were discovered by Liberty, which resulted in additional construction costs. The parties attempted to resolve their disputes over the design defects and additional cost overages through mediation but, ultimately, Liberty filed a complaint, on November 15, 2021, asserting breach of contract and professional negligence claims. Notwithstanding the commencement of its action, Liberty continued to participate in mediation with Appellees.

On January 27, 2022, counsel for the parties participated in a mediation session at which Christianne Chen, Esquire ("Attorney Chen"), Associate General Counsel for Prologis, Inc. - Liberty's parent company, was present as a representative on behalf of Liberty and with the authority to bind Liberty to a settlement agreement. Liberty was also represented at the mediation by its outside counsel, Noah H. Charlson, Esquire ("Attorney Charlson"). At the mediation, the parties reached a settlement agreement that resolved the design defect disputes. Counsel for Kendall Heaton confirmed the settlement agreement that was reached at the conclusion of the mediation in an electronic

mail ("email") sent to the mediator and counsel for all parties later that same day, January 27, 2022. In the email, Kendall Heaton's counsel represented that the parties agreed to, *inter alia*, "exchange mutual [r]eleases concerning all known and unknown claims that were asserted or could have been asserted in this matter concerning the project[.]" Kendall Heaton's Motion to Enforce Settlement Agreement, 11/15/22, at Exhibit 3 - ¶(h). The following day, January 28, 2022, Attorney Charlson responded *via* email that the content of the January 27, 2022 email prepared by counsel for Kendall Heaton "represents **our** understanding" of the agreement. *Id.* at Exhibit 4 (emphasis added). On February 3, 2022, Attorney Charlson stated, *via* email, that "I can advise you that Liberty is in a position to accept the collective settlement offer[.]" *Id.* at Exhibit 5. Thereafter, Attorney Charlson (as Liberty's outside counsel) prepared a draft of the settlement agreement, which stated, in pertinent part, that Liberty released Appellees from

> all manner of actions . . . **whether or not heretofore known, suspected or asserted, which it ever had, now has, or hereafter may acquire**, arising out of or relating to the [p]roject . . . including without limitation all claims that were asserted or could have been asserted in the [l]itigation.

*Id.* at Exhibit 6 (emphasis added). On March 9, 2022, counsel for Kendall Heaton responded with a marked-up version of Liberty's draft settlement agreement that retained the language in Liberty's proposed settlement agreement, as set forth *supra*, and modified only items unrelated to the text describing the scope of the release provision. *Id.* at Exhibit 11; *see also*

N.T., 6/26/23, at 28 (explaining that the marked-up version of Liberty's draft settlement agreement included the same language proposed by Liberty regarding the release terms). Ultimately, the parties were unable to execute a written settlement agreement because, at some point, Liberty requested that the written agreement expressly exclude latent defects from those claims included within the release provision of the original oral settlement agreement that was confirmed in the email circulated by counsel for Kendall Heaton on January 27, 2022, and substantively reaffirmed by Attorney Charlson on January 28, 2022, and again on February 3, 2022. Kendall Heaton's Motion to Enforce Settlement Agreement, 11/15/22, at Exhibit 12.

On November 15, 2022, Kendall Heaton filed a motion to enforce the settlement agreement that was reached at the conclusion of the January 27, 2022 mediation session. On December 15, 2022, Liberty filed a cross-motion for enforcement of a version of the settlement agreement that excluded latent defects. The trial court, on June 26, 2023, entertained argument on the competing enforcement motions.

On August 22, 2023, the trial court granted Kendall Heaton's motion to enforce the settlement agreement and denied Liberty's cross-motion seeking enforcement of a settlement agreement that excluded latent defects. *See* Trial Court Order, 8/22/23. On August 31, 2023, the trial court *sua sponte* amended its August 22, 2023 order to include an opinion setting forth its reasons for ordering enforcement of a settlement agreement on the terms advanced by Kendall Heaton. *See* Trial Court Order, 8/31/23; *see also* 42

- 4 -

Pa.C.S.A. § 5505 (stating, "[e]xcept as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed").

On September 28, 2023, Liberty filed a notice of appeal challenging the August 31, 2023 order. In a March 22, 2024 *per curiam* order, this Court quashed Liberty's appeal on the ground that the August 31, 2023 order was not a final, appealable order as contemplated by Pennsylvania Rule of Appellate Procedure 341. *Per Curiam* Order (2503 EDA 2023), 3/22/24; **see also** Pa.R.A.P. 341(a) and (b)(1) (stating that, "an appeal may be taken as of right from any final order of a [] trial court" and defining a "final order" as, *inter alia*, an order that "disposes of all clams and of all parties").

On October 17, 2024, the trial court entered a final order that disposed of all claims and all parties thereby permitting Liberty to challenge the August 31, 2023 order. Trial Court Order, 10/17/24. This appeal followed.[1]

Liberty raises the following issues for our review:

1. Where both the client and its attorney have denied that the attorney had express authority to settle a matter on behalf of the client, can the attorney bind the client to a settlement by exchanging drafts of an agreement with opposing counsel that included terms to which the client had not agreed?

---

[1] Liberty and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

2. Where the parties did not agree on a material term of a proposed settlement agreement - the claims [Liberty] would release in return for a payment - was there a meeting of the minds and an enforceable settlement agreement?

3. Could the [trial] court resolve a motion to enforce an alleged settlement without holding an evidentiary hearing on disputed issues of fact regarding the terms of the alleged agreement and counsel's authority to enter into it on behalf of his client?

Liberty's Brief at 2.

Collectively, Liberty's issues challenge the trial court's order granting Kendall Heaton's motion to enforce the January 27, 2022 oral settlement agreement.

The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [this Court] may review the entire record in making its decision.

*Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citations, quotation marks, and original brackets omitted). "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." *Mastroni-Mucker v. Allstate Insur. Co.*, 976 A.2d 510, 518 (Pa. Super. 2009), *appeal denied*, 991 A.2d 313 (Pa. 2010).

It is well-established that, in this Commonwealth, "an agreement to settle legal disputes between parties is favored." *Mastroni-Mucker*, 976

- 6 -

A.2d at 518. "Settlement agreements are enforced according to principles of contract law," which require there to be "an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his [or her] lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Id.*

> Where a settlement agreement contains all of the requisites for a valid contract, a [trial] court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing.

*Id.* (citations omitted).

> [E]ven the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable. A contract is formed if the parties agree on essential terms and intend them to be binding even though they intend to adopt a formal document with additional terms at a later date.

*Id.* at 522 (citations, quotation marks, and original brackets omitted), *relying in part on Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999).

It is "well-settled that an attorney must have express authority in order to bind a client to a settlement agreement." *Reutzel v. Douglas*, 870 A.2d 787, 789-790 (Pa. 2005); *see also King v. Driscoll*, 296 A.3d 1178, 1184 (Pa. Super. 2023). "The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." *Reutzel*, 870 A.2d at 790; *see also Starling v. West Erie Ave. Bldg. & Loan Ass'n*, 3 A.2d 387, 388 (Pa. 1939) (stating,

an attorney's actions on behalf of his or her client "[do] not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens"). An attorney does, however, have implied or apparent authority to conduct acts that are incidental to the transaction, usually accompany that type of transaction, or are reasonably necessary to accomplish the client's goal in the transaction so long as the attorney's actions do not bind the client in such a way that the client's rights are forfeited without the client's authorization. **Starling**, 3 A.2d at 388; **see also DiGiuseppe v. DiGiuseppe**, 96 A.2d 874, 876 (Pa. 1953) (stating, an attorney may take action "to effectuate the intention of his [or her] client").

Here, the trial court found, and the record supports, that the parties reached an oral agreement on essential terms at the conclusion of the mediation session on January 27, 2022, and that the subsequent inability to reduce that oral agreement to writing, which involved Liberty's unilateral attempt to include additional terms, does not affect the validity, and enforceability, of the oral agreement. **See** Trial Court Opinion, 1/8/25, at 18 (stating, "[t]he oral agreement to settle [reached] on January 27, 2022[,] was complete and binding at that time, and the fact that [a written agreement later tendered by Liberty] for signing might not have conformed to the oral agreement would not in any way affect the validity of said oral agreement"). Competent evidence within the record supports the trial court's conclusion that, at the January 27, 2022 mediation, a monetary offer to settle the

- 8 -

disputed claims was presented by Appellees and accepted by Liberty in exchange for Liberty's agreement to release Appellees from "all known and unknown claims that were asserted or could have been asserted in this matter concerning the project", thereby terminating the lawsuit in exchange for monetary payment. There is no dispute that the intent of the mediation was to resolve the claims alleged in Liberty's complaint and that, at the conclusion of the January 27, 2022 mediation, the parties agreed to settle the claims for a sum certain to be paid by Appellees in exchange for Liberty's withdrawal of the pending litigation. *See* N.T., 6/26/23, at 12 (Attorney Charlson arguing that, "[w]e reached a financial settlement and it was for a portion of costs that had actually been incurred by [Liberty] to remediate the effects of design errors and omissions"); *see also id.* at 25-29 (Counsel for Kendall Heaton explaining that an agreement to resolve the known and unknown claims in exchange for mutual releases was reached at the conclusion of the January 27, 2022 mediation); Kendall Heaton's Motion to Enforce Settlement Agreement, 11/15/22, at Exhibit 3 (stating, "[t]he settlement of this matter is a resolution of all claims and cross[-]claims, including counsel fees and costs, for all claims that were or could have been asserted in the matter"). As such, to the extent that the parties sought to resolve "all known and unknown claims that were asserted or could have been asserted in this matter concerning the project," the parties mutually assented to the key terms of an agreement, namely that in exchange for Liberty's release of Appellees from liability for the alleged claims (including – in the words of Liberty's outside

counsel – known claims, unknown claims, and claims acquired in the future), Appellees agreed to pay Liberty a sum certain and, upon payment, Liberty agreed to terminate its lawsuit against Appellees.[2]  The oral agreement reached at the conclusion of the January 27, 2022 mediation was not contingent upon the execution of a written settlement agreement but, rather, as indicated in the settlement summary email sent by counsel for Kendall Heaton and confirmed by Liberty's outside counsel, the oral agreement was the operative settlement agreement until such time as a written agreement could be executed.  *Id.* at Exhibit 11.  Therefore, the trial court did not err in enforcing the oral settlement agreement reached on January 27, 2022, as subsequently set forth in the March 9, 2022 draft of the settlement agreement, despite the fact that the parties were unable, ultimately, to reduce the oral settlement agreement to writing.

Furthermore, the subsequent attempt by Liberty to exclude latent defects from the alleged construction defect claims resolved by the settlement agreement does not negate nor otherwise cause the oral settlement agreement to become invalid or unenforceable.  As the trial court notes, and the parties agree, "latent defects" were not expressly discussed at the January

_____

[2] Attorney Charlson's draft settlement agreement which provided that, in exchange for monetary remuneration, Liberty released "all manner of actions . . . whether or not heretofore known, suspected or asserted, which [Liberty] ever had, now has, or hereafter may acquire, arising out of or relating to the [p]roject, including without limitation all claims that were asserted or could have been asserted in the [l]itigation", comports with the oral settlement agreement reached at the mediation and summarized in the confirmatory email sent by counsel for Kendall Heaton on January 27, 2022.

27, 2022 mediation. N.T., 6/26/23, at 13 (Attorney Charlson stating, "latent defects were not part of the [oral] settlement [agreement]"); ***see also id.*** at 29 (Counsel for Kendall Heaton stating, "[w]e never discussed a carve out for latent defects"); Kendall Heaton's Motion to Enforce Settlement Agreement, 11/15/22, at Exhibit 3; Liberty's Cross-Motion to Enforce Settlement Agreement, 12/15/22, at Declaration of Attorney Chen and Declaration of Attorney Charlson. Because a provision excluding "latent defects" from the types of claims resolved by the oral settlement agreement was not discussed, and agreed upon, at the January 27, 2022 mediation, this exclusionary provision is not part of the oral settlement agreement but, rather, was an additional term Liberty attempted to insert into the oral settlement agreement at a later date.[3]

_____

[3] As the parties agree, and the trial court notes, whether, or not, latent defects are included within the phrase "known and unknown claims that were asserted or could have been asserted in [Liberty's complaint] concerning the project" was not an issue presently before the trial court to resolve at this juncture. N.T., 6/26/23, at 14-15 (Attorney Charlson stating, "if any new claims for design errors or omissions arise in the future that are not currently known, those would be subject to new claims by Liberty"); ***see also id.*** at 29 (Counsel for Kendall Heaton stating, "[i]f something were to come up in the future that [Liberty] claims is a latent defect, [it] can file a motion at that point in time, and this release doesn't bar [such a claim]"); Trial Court Opinion, 1/8/25, at 20 (stating, "[t]he issue before the [trial court] was not and is not whether or not a latent defect qualifies as an unknown defect"). Instead, this issue, should it arise in the future, is more aptly addressed in subsequent mediation or litigation. To be clear, the oral settlement agreement reached at the conclusion of the January 27, 2022 mediation constituted a mutual understanding as to resolution of all known, unknown, and future claims as presented in Liberty's complaint, and the trial court did not err in enforcing the oral settlement agreement as such, even if Liberty is free, in the future,

Finally, Attorney Charlson did not act without the express authority of Liberty. It is undisputed that Attorney Chen possessed the authority to enter into an agreement to settle Liberty's claims against Appellees. Attorney Chen attended the January 27, 2022 mediation and was aware of the discussions that took place, including the fact that latent defects were not mentioned and, therefore, were not part of the terms of the oral settlement agreement. Liberty's Cross-Motion to Enforce Settlement Agreement, 12/15/22, at Declaration of Attorney Chen. In responding to the settlement summary email sent by Kendall Heaton's counsel on January 27, 2022, Attorney Charlson stated that the email represented "**our** understanding" of the agreement, which indicates that the summary email comported with both Liberty's outside and its in-house counsel's recollection of the terms of the settlement agreement, as well as Liberty's understanding of the terms of the settlement agreement. The subsequent actions by Attorney Charlson in confirming that the settlement summary email represented his client's understanding of the agreement and that Liberty accepted the agreement were incidental actions performed in carrying out Liberty's intent to settle the matter.[4]

_____

to assert that the language contained in the oral settlement agreement does not bar "latent" claims.

[4] To the extent that Liberty claims that the trial court erred in not conducting an evidentiary hearing, this issue is waived for failure to raise the request for an evidentiary hearing with the trial court. At the hearing on the competing motions to enforce a settlement agreement, the trial court asked counsel for all parties if they wished to proceed with oral argument *via* an internet-based

Order affirmed.

Judge Beck joins this Opinion.

Judge Dubow files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026

---

communications platform, or if they were requesting an evidentiary hearing, which the trial court indicated had to be held in-person.  N.T., 6/26/23, at 5. Counsel for Liberty, as well as counsel for Appellees, declined an evidentiary hearing.  ***Id.***